United States Court of Appeals,

Fifth Circuit.

Nos. 95-11149, 96-10076.

SID RICHARDSON CARBON & GASOLINE CO., Plaintiff-Appellant,

v.

INTERENERGY RESOURCES, LTD., Defendant,

Wagner & Brown II, Cyril Wagner, Jr., and Jack E. Brown, Defendants-Appellees.

SID RICHARDSON CARBON & GASOLINE CO., Plaintiff-Appellant,

v.

INTERENERGY RESOURCES, LTD., Defendant-Appellee,

Wagner & Brown II, Cyril Wagner, Jr., and Jack E. Brown, Defendants.

Nov. 15, 1996.

Appeals from the United States District Court for the Northern District of Texas.

Before SMITH and PARKER, Circuit Judges, and JUSTICE, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

In this consolidated matter, Sid Richardson Carbon & Gasoline Company ("Sid Richardson") appeals the denial of its motion to remand these proceedings to state court and appeals the subsequent entry of final judgments in favor of Wagner & Brown II, Cyril Wagner, Jr., and Jack E. Brown (collectively "Wagner & Brown") and Interenergy Resources, Ltd. ("Interenergy"). Because we hold that the district court erred in finding that the Wagner & Brown

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

defendants were fraudulently joined, we conclude that complete diversity does not exist among the parties, so there is no subject matter jurisdiction. We reverse, vacate and remand the judgment with instructions to remand to state court.

I.

In 1979, Wagner & Brown II, a general partnership engaged in the production of natural gas, entered into negotiations with Sid Richardson Carbon & Gasoline Company concerning the conveyance of processing rights to Wagner & Brown's natural gas production. Cyril Wagner, Jr., and Jack E. Brown, Wagner & Brown's general partners, represented the partnership in the negotiations.

The transaction ultimately was structured to accommodate Wagner's and Brown's respective estate planning goals. Under the terms of the contract, Wagner & Brown II would make a charitable contribution of ten percent of the processing rights to the Dallas Community Chest; both Wagner & Brown II and the Dallas Community Chest then would convey their interests in the gas processing rights to Interenergy, a Cayman Islands corporation, in return for cash and an interest-bearing note in the amount of $8.4 million. Interenergy, in turn, would assign the processing rights to Sid Richardson in return for payments prescribed under the contract. None of the Wagner & Brown defendants signed the contract by which Interenergy assigned the processing rights to Sid Richardson.

During the negotiations, Interenergy warranted that there was no obligation for Sid Richardson to withhold federal income taxes on its payments to Interenergy. Article 11.4 of the contract

2

provided that Interenergy would be responsible for the payment of such taxes, and Interenergy furnished a separate letter of indemnity to Sid Richardson, promising to "indemnify and hold Richardson harmless from any liability or expense it may incur because of Richardson's failure to withhold any portion of the payments due to Interenergy." The indemnity letter was signed only by Interenergy, not by the Wagner & Brown defendants.

Soon after this transaction, the gas market collapsed. Within two years after consummation of the agreement, Sid Richardson sued to rescind or reform the contract, citing changed market conditions that had rendered the agreement economically infeasible. In 1984, this lawsuit was settled by an agreement granting Sid Richardson, *inter alia,* the right to terminate the contract and all related agreements if it incurred losses of $10 million as a consequence of the contract. In March 1985, Sid Richardson gave notice of its intention to exercise this "stop-loss" provision.

After Interenergy and the Wagner & Brown defendants demanded arbitration of the dispute, Sid Richardson filed a second lawsuit, seeking interpretation of the settlement agreement and enforcement of the "stop-loss" provision. This second lawsuit was resolved by a second settlement agreement, effective June 1, 1988, which forms the basis of the instant case. The settlement agreement contained both a termination provision, terminating all agreements between the parties, and a release provision, releasing all claims between the parties. The Wagner & Brown defendants contend that these provisions extinguished the indemnity rights of Sid Richardson,

3

whereas Sid Richardson argues that its right to indemnity survived the settlement agreement.

Meanwhile, in 1985 the Internal Revenue Service ("IRS") had initiated a preliminary inquiry into the original transaction, specifically concerning whether Sid Richardson was obligated to withhold taxes on the payments made to Interenergy under the contract and to remit those funds to the IRS. In 1986, the IRS proposed an assessment of $7.7 million against Sid Richardson, offering to stay the proceedings while Sid Richardson sought indemnity from Interenergy pursuant to the letter of indemnity.

All parties agree that Sid Richardson notified Wagner & Brown II of the investigation and offered to let Wagner & Brown assume responsibility for the defense; the parties vehemently disagree, however, concerning whether this communication constituted a demand by Sid Richardson upon Wagner & Brown and an invocation of the indemnity provision, or merely a courtesy call. In any event, Wagner & Brown refused to assume responsibility for the defense, and apparently the matter was dropped when the IRS failed actively to pursue the investigation against Sid Richardson, turning its attention instead to Interenergy.

Failing in its efforts to collect the delinquent taxes from Interenergy, the IRS renewed its investigation of Sid Richardson and in 1995 issued a statutory notice of deficiency against Sid Richardson in the amount of $38,651,368.19.[1] In the interim,

---

[1]This amount represented the $7.7 million principal deficiency, penalties, and interest.

however, Sid Richardson had entered into the settlement agreement with Interenergy and the Wagner & Brown defendants, terminating all prior agreements and releasing all claims between the parties. Predictably, the parties vehemently disagree as to whether this settlement extinguished Sid Richardson's indemnity rights. Consequently, all parties have denied responsibility for the IRS assessment.

Sid Richardson initiated this lawsuit in Texas state court, suing Interenergy and the Wagner & Brown defendants for breach of contract and seeking a declaratory judgment enforcing the terms of the indemnity letter to guarantee Sid Richardson indemnification against potential tax liability. The defendants removed to federal court, invoking diversity jurisdiction.

Although complete diversity existed only between Sid Richardson, a Texas corporation, and Interenergy, a Cayman Islands corporation, the defendants argued that the Wagner & Brown defendants had been fraudulently joined. The district court agreed and dismissed all claims against the Wagner & Brown defendants with prejudice, exercising its diversity jurisdiction over the remaining parties. The district court severed all claims against the Wagner & Brown defendants, entering final judgment for the defendants pursuant to FED.R.CIV.P. 54(b), and Sid Richardson appealed.

While that appeal, No. 95-11149, was pending, the lawsuit against Interenergy proceeded in the district court, which, on January 5, 1996, entered summary judgment for Interenergy on all claims. Sid Richardson appealed, in No. 96-10076, and the two

5

cases were consolidated for appeal.

                                  II.

We review a denial of remand to state court *de novo.* *Burden v. General Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir.1995). A party invoking the removal jurisdiction of the federal courts bears a heavy burden. *Id.* at 217; *see also Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) (observing that the removing party bears the burden of proving fraudulent joinder). In order successfully to prove that non-diverse defendants have been fraudulently joined in order to defeat diversity, the removing party must demonstrate "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court."[2]

In reviewing a claim of fraudulent joinder, the district court must evaluate all factual allegations and ambiguities in the controlling state law in favor of the plaintiff. *Burden,* 60 F.3d at 216; *B, Inc.,* 663 F.2d at 549. If there is any possibility that the plaintiff has stated a cause of action against any non-diverse defendant, the federal court must conclude that joinder is proper, thereby defeating complete diversity, and the case must

---

[2]*Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995); *accord East Texas Mack Sales, Inc. v. Northwest Acceptance Corp.,* 819 F.2d 116, 119 (5th Cir.1987); *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981). Fraudulent joinder also may be established by demonstrating that there has been "outright fraud in the plaintiff's recitation of jurisdictional facts." *Burden,* 60 F.3d at 217. This rule is not relevant, however, to the present case.

6

be remanded.  *Burden,* 60 F.3d at 216;  *B, Inc.,* 663 F.2d at 550.

We have consistently held that claims of fraudulent joinder should be resolved by a summary judgment-like procedure whenever possible.  Although the district court may "pierce the pleadings" to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact, but rather should make a summary determination by resolving all disputed facts in favor of the plaintiff.  *Burden,* 60 F.3d at 217;  *Cavallini,* 44 F.3d at 263;  *see also B, Inc.,* 663 F.2d at 551 (holding that the preliminary question of subject matter jurisdiction should be resolved by a summary determination).  Insofar as Sid Richardson objects to the summary judgment-like procedure employed by the district court, therefore, the objection is meritless.  *See Carriere,* 893 F.2d at 100.

Our evaluation of fraudulent joinder claims does not anticipate a judgment on the merits, but merely considers whether there is any possibility that the plaintiff might prevail.  "We do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so."  *Burden,* 60 F.3d at 216.  Mindful of our obligation to exercise diversity jurisdiction only in cases of complete diversity, we will not authorize removal on the basis of fraudulent joinder unless there is *no possibility* that the plaintiff could state a cause of action against the non-diverse defendants.  *See B, Inc.,* 663 F.2d at 549.  The Wagner & Brown defendants have failed to satisfy this strict burden of proof.

7

III.

In its original petition filed in state court, Sid Richardson stated a single cause of action for breach of contract against Interenergy and the Wagner & Brown defendants.[3] Sid Richardson requested a declaration that Interenergy is obligated to indemnify it for any tax liability and expenses it has incurred or will incur in relation to the statutory notice of deficiency and requested a corollary declaration that the Wagner & Brown defendants are jointly and severally liable with Interenergy because they disregarded the corporate form and induced Sid Richardson to enter into the transaction by use of a fraudulent indemnity agreement. Finally, Sid Richardson sought damages for the defendants' failure to fulfill their obligations under the indemnity agreement.

The Wagner & Brown defendants argue that they cannot be held jointly and severally liable for this alleged breach of contract, however, because they were not parties to the contract. Indeed, the Wagner & Brown defendants signed neither the final agreement to convey processing rights from Interenergy to Sid Richardson nor the indemnity letter that forms the basis of this lawsuit. Hence, the Wagner & Brown defendants argue that it is legally impossible for

---

[3]Although the petition formally stated two independent causes of action for breach of contract and declaratory judgment, the latter ground is merely a theory of recovery for the former. The Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 *et seq.* (Vernon 1986), is merely a procedural device; it does not create any substantive rights or causes of action. *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1302 (5th Cir.1993). Consequently, we construe the request for declaratory judgment as a theory of recovery predicated upon the cause of action for breach of contract.

Sid Richardson to recover damages from them.

As a general rule, the Wagner & Brown defendants' failure to sign the contract would immunize them from liability, justifying the district court's conclusion that these defendants were fraudulently joined merely to defeat complete diversity. Sid Richardson, however, pleaded facts that, when taken as true for purposes of fraudulent joinder analysis, would warrant "piercing the corporate veil" to impose liability upon the Wagner & Brown defendants. Under such circumstances, we cannot conclude that joinder was fraudulent.

As a general rule, shareholders are not liable for the debts of a corporation under Texas law. Nonetheless, Texas courts will "pierce the corporate veil" to prevent fraud or to achieve equity. In particular, courts will disregard the corporate fiction when individuals exploit the corporate form as a sham to perpetrate a fraud.[4] To warrant such equitable relief, a plaintiff must prove that the defendant caused the corporation to be used for the purpose of perpetrating a fraud on the plaintiff, primarily for the personal benefit of the defendant. TEX.BUS.CORP.ACT ANN. art. 2.21A(2) (Vernon Supp.1996).

Sid Richardson pleaded facts that would warrant judgment against the Wagner & Brown defendants on a theory of corporate

---

[4]*Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1987), *superseded on other grounds by* TEX.BUS.CORP. ACT ANN. art 2.21A(3) (Vernon Supp.1996); *see also Fidelity & Deposit Co. v. Commercial Casualty Consultants, Inc.,* 976 F.2d 272, 274-75 (5th Cir.1992) (summarizing the doctrine of corporate disregard under Texas law; *Sims v. Western Waste Indus.,* 918 S.W.2d 682, 684 (Tex.App.—Beaumont 1996, n.w.h.) (same).

9

disregard. Sid Richardson alleged, *inter alia,* that the Wagner & Brown defendants are the real parties in interest in this lawsuit, exercising control over Interenergy and causing Interenergy to be used for the purpose of perpetrating a fraud on Sid Richardson for the direct personal benefit of the defendants. Moreover, Sid Richardson adduced specific facts in support of its motion to remand that support the theory of corporate disregard.

Viewing the pleadings and evidence in the light most favorable to the plaintiff, we cannot conclude that there is "absolutely no possibility" that Sid Richardson could successfully pierce the corporate veil to impose liability on the Wagner & Brown defendants under Texas law. *See Cavallini,* 44 F.3d at 259; *accord East Texas Mack Sales, Inc.,* 819 F.2d at 119; *B, Inc.,* 663 F.2d at 549. Therefore, the mere fact that the Wagner & Brown defendants were not formal parties to the indemnity agreement does not demonstrate, as a matter of law, that joinder was fraudulent.

IV.

Having concluded that Sid Richardson successfully stated a claim for breach of contract and corporate disregard, we turn to the affirmative defenses raised by the Wagner & Brown defendants. Should the defendants prevail on any of these defenses, it necessarily follows that joinder was fraudulent, and the district court properly exercised its removal jurisdiction. On the other hand, if there is any possibility that Sid Richardson might survive the affirmative defenses, we must vacate for remand to state court.

The Wagner & Brown defendants argue that the indemnity rights

10

granted to Sid Richardson in the original transaction were either terminated or released by the terms of the settlement agreement. To prevail on these affirmative defenses as a matter of law, the Wagner & Brown defendants must prove that the language of the settlement agreement is unambiguous. The determination of whether a settlement agreement is ambiguous is a question of law that we review *de novo. See Shelton v. Exxon Corp.,* 921 F.2d 595, 602-03 (5th Cir.1991).

In addition, the Wagner & Brown defendants argue that the indemnity claim is res judicata, because Sid Richardson could have litigated the indemnity question in previous litigation between the parties. We review *de novo* the assertion that a given claim is res judicata. *Production Supply Co., Inc. v. Fry Steel, Inc.,* 74 F.3d 76, 78 (5th Cir.1996).

A.

The Wagner & Brown defendants argue that the promise of tax indemnity provided to Sid Richardson in the 1980 indemnity letter was terminated by the settlement agreement executed in 1988 among Sid Richardson, Interenergy, and the Wagner & Brown defendants.[5] The settlement agreement purported to terminate, *inter alia,* all agreements among the parties relating to the processing of gas or any related matters.[6] Sid Richardson does not dispute that the

---

[5]A fourth party to the settlement agreement, Canyon Pipe Line Corporation, is not a party to this litigation and hence is not relevant to our analysis.

[6]A sublease agreement specifically excepted from the settlement agreement is not at issue.

11

indemnity letter is a "related matter" within the terms of the settlement agreement and acknowledges that the indemnity letter was terminated by the settlement.

Sid Richardson justifies its claim for tax indemnity, however, by distinguishing between the prospective termination of *agreements* and the retroactive release of *rights.* Whereas the settlement agreement prospectively terminated *agreements* between the parties, Sid Richardson argues, the settlement did not retroactively release *rights* to indemnity that had vested previously in Sid Richardson. The right to indemnity, Sid Richardson suggests, vested immediately upon its payment of funds to Interenergy in reliance on the indemnity letter. Consequently, Sid Richardson concludes that the right to tax indemnity, which had vested prior to 1988 in reliance on the indemnity letter, was not retroactively extinguished by the subsequent termination of the indemnity letter pursuant to the settlement agreement.

In effect, Sid Richardson advocates a distinction between the "termination" of an agreement, which operates prospectively only, and the "rescission" of an agreement, which operates retroactively to restore the parties to the *status quo ante.* Because the 1988 settlement agreement "terminated" all agreements among the parties, rather than "rescinding" the agreements, Sid Richardson concludes that its vested indemnity rights survived the settlement.

Although we express no opinion on this interpretation of the settlement agreement, we acknowledge that the agreement's terms are ambiguous. Under Texas law, parties may mutually agree to

12

"rescind" a contract, restoring the *status quo ante.*[7] The parties agreed to "terminate" the indemnity agreement, not to "rescind" it, however.

We are aware of no Texas authority that provides that the "termination" of agreements automatically applies retroactively to extinguish vested rights; to the contrary, several authorities suggest otherwise. The Uniform Commercial Code, for example, defines "termination" as a prospective remedy only, which does not extinguish vested rights. "On "termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives." TEX.BUS. & COM.CODE ANN. § 2.106(c) (Tex.U.C.C.) (Vernon 1994).[8] At a minimum, therefore, the law of Texas is ambiguous concerning the retroactive effect of a settlement agreement purporting to "terminate" all prior agreements between the parties.

The task of a court interpreting the terms of a contract is to vindicate the intent of the parties.[9] In the present case,

---

[7]*See Allen v. Allen,* 751 S.W.2d 567, 573 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *see also Manges v. Guerra,* 621 S.W.2d 652, 658 (Tex.Civ.App.—Waco 1981) (noting the express retroactive effect of rescission), *rev'd in part and aff'd in part,* 673 S.W.2d 180 (Tex.1984).

[8]*See also* CORBIN ON CONTRACTS § 1266 at 66-67 (1962) (suggesting that powers of termination usually operate prospectively but do not discharge obligations that have already arisen); RESTATEMENT (SECOND) OF CONTRACTS § 283 cmt. a (1981) (distinguishing "rescission" from "termination").

[9]*See Shelton,* 921 F.2d at 603; *see also* 14 TEX.JUR.3d *Contracts* § 263 (1981) (stating that the court must determine whether the parties intended rescission to discharge all liabilities previously incurred under the agreement).

13

however, neither the language of the contract nor the law of Texas, is sufficiently unambiguous for us to hold, as a matter of law, that any indemnity rights that had vested in Sid Richardson prior to the settlement agreement were retroactively extinguished by the termination clause.

All parties agree that the agreement is silent on the question of whether pre-termination contractual obligations survived the termination clause. Moreover, the language of the settlement agreement is inherently ambiguous, and that ambiguity is merely compounded by Texas law. Therefore, mindful of our obligation to view the facts in the light most favorable to the plaintiff and to construe ambiguity in state law in favor of the plaintiff, we cannot say that there is absolutely no possibility that Sid Richardson might prevail in state court. Under such circumstances, joinder is not fraudulent.

The Wagner & Brown defendants note that Texas courts do not draft new contracts for parties who fail to provide for themselves. *Royal Indemnity Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965). Neither do we. Therefore, we hold that the ambiguous termination provision in the 1988 settlement agreement does not establish fraudulent joinder.

B.

Alternatively, appellees argue that the release provision in the 1988 settlement agreement fully released the Wagner & Brown defendants from all liability incurred prior to 1988 pursuant to the indemnity letter. Insofar as the right to indemnity vested in

14

Sid Richardson prior to the termination of the indemnity agreement, they conclude, such indemnity rights were fully released and discharged by the release provision of the settlement agreement.[10] Although this affirmative defense ultimately may prove successful, we cannot conclude, as a matter of law, that the release provision extinguished Sid Richardson's right to recover tax indemnity from the Wagner & Brown defendants.

Categorical releases are construed narrowly under Texas law.[11] The release provision at issue in the present case states that the parties to the settlement agreement "release, discharge, disclaim, and renounce any and all claims, controversies, demands, rights, disputes, and causes of action, of whatsoever kind and nature, whether known or unknown, contingent or absolute, which were asserted or could have been asserted" by the respective parties. Sid Richardson contends that its claim for tax indemnity did not accrue until the IRS issued a formal notice of deficiency in 1995, and consequently the claim could not have been asserted at the time

---

[10]Hence, appellees conclude that the settlement agreement comprehensively extinguishes all potential liability to Sid Richardson, arguing that if it vested *prior* to execution of the settlement agreement, it was released, whereas if the right vested *after* the settlement agreement, it was extinguished by the termination of the indemnity agreement. We acknowledge that this interpretation is a reasonable construction of the settlement agreement and may ultimately prevail in state court. For reasons that we will explain, however, it is not sufficiently impregnable to satisfy the heavy burden of proof required to establish fraudulent joinder.

[11]*Anheuser-Busch Cos. v. Summit Coffee Co.,* 858 S.W.2d 928, 933 (Tex.App.—Dallas 1993, writ denied), *vacated on other grounds,* --- U.S. ----, 115 S.Ct. 1309, 131 L.Ed.2d 192 (1995), *reinstated as modified,* No. 05-92-00389-CV, 1996 WL 14061, at *4, --- S.W.2d ---- (Tex.App.—Dallas Jan. 12, 1996, n.w.h.).

the settlement agreement was executed in 1988.  Thus, Sid Richardson concludes that its claim for tax indemnity was not released under the terms of the settlement agreement.

Under Texas law, a cause of action predicated on tax liability does not accrue until the IRS issues a formal notice of deficiency.  *See Bankruptcy Estate of Rochester v. Campbell,* 910 S.W.2d 647, 651-52 (Tex.App.—Austin 1995, writ granted).[12] Preliminary notice of tax deficiency is not sufficient to trigger accrual of a claim.  "Prior awareness of IRS activity, such as a preliminary notice of deficiency, informs the taxpayer of some risk, but the risk is not sufficiently definite or concrete until the IRS has issued its formal notice of deficiency."  *Id.* at 651-52.  Therefore, because only a formal notice of deficiency creates the requisite concrete and substantial risk of tax liability, a cause of action founded upon a tax deficiency does not accrue under Texas law until the IRS has issued a formal notice of deficiency. *Id.*

Notwithstanding preliminary inquiries as early as 1985, the IRS did not issue a formal notice of deficiency to Sid Richardson until 1995.  Sid Richardson may credibly argue, therefore, that its claim for indemnity did not accrue until 1995 and could not have been asserted under Texas law at the time the settlement agreement

---

[12]*See also Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 642-43 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that claim accrued upon receipt of formal notices of adjustment); *Hoover v. Gregory,* 835 S.W.2d 668, 672-74 (Tex.App.—Dallas 1992, writ denied) (holding that claim accrued only upon receipt of notice of deficiency).

16

was executed.  Because we conclude that the right to tax indemnity did not accrue under Texas law until 1995, we cannot hold, as a matter of law, that the 1988 release provision extinguished the claim asserted by Sid Richardson against the Wagner & Brown defendants.  *See Anheuser-Busch,* 858 S.W.2d at 933.[13]

Under these circumstances, we cannot conclude that there is absolutely no possibility that Sid Richardson might prevail against the Wagner & Brown defendants in state court, notwithstanding the termination and release provisions of the settlement agreement. *See Cavallini,* 44 F.3d at 259.  Viewing the facts and the state law

---

[13]The Wagner & Brown defendants argue that, regardless of when the claim accrued, Sid Richardson actually asserted its claim for tax indemnity in 1986.  Therefore, they conclude that the claim was released by the settlement agreement.  After the IRS conducted a preliminary inquiry into the transaction and proposed an assessment of $7.7 million against Sid Richardson, appellant notified the Wagner & Brown defendants of the investigation.  The parties vehemently disagree as to whether this communication constituted a formal assertion of the indemnity claim or merely a courtesy call.

We need not resolve this disagreement, however.  For purposes of fraudulent joinder analysis, we must construe disputed facts in favor of the plaintiff, so we assume, *arguendo,* that Sid Richardson did not make demand upon the Wagner & Brown defendants in 1986, invoking the terms of the indemnity letter.  Therefore, we cannot conclude that the settlement agreement released a claim for tax indemnity that Sid Richardson had previously asserted.

Moreover, because preliminary communications with the IRS are insufficient to provide "sufficiently definite or concrete" notice of potential tax liability to trigger accrual of the claim, these informal communications among the IRS, Sid Richardson, and the Wagner & Brown defendants were insufficient to trigger accrual of the tax indemnity claim in 1986.  *See Campbell,* 910 S.W.2d at 651-52.  For purposes of fraudulent joinder analysis, therefore, we must assume that the tax indemnity claim did not accrue until 1995, when the IRS issued a statutory notice of deficiency to Sid Richardson.

17

in the light most favorable to Sid Richardson, as we are obliged to do for purposes of fraudulent joinder analysis, we acknowledge that the right to tax indemnity may have vested in Sid Richardson prior to the termination of the indemnity agreement, and that the cause of action for tax indemnity may not have accrued until after execution of the release in the settlement agreement.[14]  Therefore, we hold that the settlement agreement does not satisfy the heavy burden of proof required to establish fraudulent joinder.

### C.

Finally, the Wagner & Brown defendants argue that the instant claim for tax indemnity raised by Sid Richardson is res judicata. Although this affirmative defense ultimately may prove successful, our conclusion that the tax indemnity claim did not accrue until 1995 precludes us from holding, as a matter of law, that the cause of action is barred by res judicata.

We determine the preclusive effect of a state court judgment according to state law. *Patin v. Allied Signal, Inc.,* 77 F.3d 782,

---

[14]Hence, Sid Richardson avoids the no-win situation created by the complementary construction of the termination and release provisions advocated by appellees.  Because the right to indemnity vested in Sid Richardson prior to execution of the settlement agreement, the termination provision did not retroactively terminate the vested right.  Because the claim for tax indemnity arising from that right did not accrue until 1995, however, when the IRS issued its notice of deficiency, the release provision did not extinguish the cause of action.

Under this theory, because the right to tax indemnity vested prior to termination yet accrued after release, the cause of action for tax indemnity survives the settlement agreement.  We do not suggest that this interpretation is necessarily correct and conclusive, but only that it is a reasonable interpretation of the settlement agreement that precludes a finding of fraudulent joinder.

18

789 (5th Cir.1996).  Texas follows the transactional approach to res judicata.  *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 798 (Tex.1992).  Under this doctrine, a subsequent suit is barred if it arises out of the same subject matter as a previous suit, and the matter could have been litigated in the prior suit.  *Id.*  Because the prior litigation between these parties concerned the transaction at issue in the present case—the conveyance of gas processing rights—the Wagner & Brown defendants contend that the instant claim for tax indemnity is necessarily barred by res judicata.  We disagree.

In order to establish that the instant claim is res judicata, the Wagner & Brown defendants must demonstrate that Sid Richardson could have litigated its claim for tax indemnity in the prior suit.  As we have previously noted, however, the claim for tax indemnity did not accrue under Texas law until 1995, when the IRS issued a statutory notice of deficiency.

It is axiomatic that a claim that has not yet accrued is not ripe for adjudication, and hence it is not a claim that "could have been litigated" in a previous lawsuit.  Under such circumstances, we cannot conclude that the instant claim for tax indemnity "could have been litigated" by Sid Richardson before the cause of action accrued in 1995, and thus we decline to hold that the instant claim is barred by res judicata.

### D.

Although we express no opinion as to whether Sid Richardson ultimately will prevail on the merits, we must conclude that the

19

Wagner & Brown defendants are not entitled to judgment as a matter of law on their affirmative defenses.  Because we cannot conclude that there is "absolutely no possibility" that Sid Richardson might prevail against the Wagner & Brown defendants, joinder was not fraudulent.  *See Cavallini,* 44 F.3d at 259.[15]

V.

In summary, the judgment dismissing all claims against Wagner & Brown II, Cyril Wagner, Jr., and Jack E. Brown in No. 95-11149, on the grounds that they were fraudulently joined in this lawsuit, is REVERSED.  The summary judgment in favor of Interenergy Resources, Ltd., in No. 96-10076 is VACATED for lack of subject matter jurisdiction.  This cause is REMANDED to the district court with instructions to remand to state court, unless it should otherwise appear that the district court may exercise subject matter jurisdiction.

---

[15]Our disposition of this case makes it unnecessary for us to consider the second issue raised by Sid Richardson on this appeal, i.e., whether the district court erred by denying the plaintiff leave to amend the complaint.