Marta VARGAS, Plaintiff,

v.

**STATE FARM LLOYDS and Keith Bruce, Defendants.**

No. Civ.A. G–02–363.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 10, 2002.

Stephen W. Boyd, Boyd Saindon, Houston, TX, for Plaintiff.

Warren Royal Taylor, Taylor and Taylor, Houston, TX, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, DENYING DEFENDANT STATE FARM LLOYDS' MOTION TO DISMISS FRAUDULENTLY JOINED DEFENDANT, AND DENYING PLAINTIFF'S MOTION FOR COSTS

KENT, District Judge.

On April 22, 2002, Plaintiff Marta Vargas ("Vargas") filed suit against Defendants State Farm Lloyd ("State Farm") and Keith Bruce ("Bruce") in the County Civil Court of Law Number Three of Galveston County, Texas, alleging causes of action for breach of contract, breach of duty of good faith and fair dealing, violations of the Texas Insurance Code, Tex. Ins.Code arts. 21.21, 21.55, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). On May 24, 2002, Defendant State Farm timely removed the action to this Court on the basis of diversity jurisdiction, and concurrently filed a Motion to Dismiss Fraudulently Joined Defendant, and Motion for Partial Summary Judgment. On June 13, 2002, Plaintiff timely responded to both Motions, and filed a Motion to Remand and for Costs. Because subject matter jurisdiction is lacking in this case, and for the reasons articulated below, Plaintiff's Motion to Remand is hereby **GRANTED,** Defendant's Motion to Dismiss Fraudulently Joined Defendant is hereby **DENIED,** and Plaintiff's Motion for Costs is hereby **DENIED.**

### I.

The Parties offer conflicting versions of the facts leading up to this lawsuit. According to Plaintiff's Original Petition, Vargas purchased a Texas Homeowners Broad Form Policy issued by State Farm insuring her League City, Texas home against all risks of physical loss caused by water damage and plumbing leaks. Sometime thereafter, Vargas claims that her home sustained structural and cosmetic damage as a result of plumbing leaks, which Vargas promptly reported to State Farm on or about July 1, 2000. In response to this claim, Vargas alleges that State Farm and Defendant Bruce, a State Farm insurance adjuster, hired a plumbing company to test the plumbing lines in Vargas' home. Vargas also avers that State Farm and Bruce knowingly hired a biased engineer, J.R. Meyer ("Meyer"), to determine the cause of the foundation movement and related damage. According to Vargas, Meyer is known for harboring a bias towards the insurance companies and producing "result-oriented reports on which [insurance companies] can either deny coverage for foundation claims or make low-ball offers of only partial repairs ..." (Pl.'s Pet. at 3.) Although the plumbing company retained by State Farm identified a leak in Vargas' plumbing system, Meyer concluded that the damage to the foundation, floors, walls, and ceilings of Vargas' home was not caused by the plumbing leak, but rather by the soil-drying effects of the dry climate and adjacent vegetation. Based upon these reports, State Farm denied coverage to Vargas in a letter issued and signed by Bruce on May 21, 2001. Shortly after receiving the coverage denial letter, Vargas sent a letter to Bruce challenging Meyer's methodology and conclusions, and requesting additional information about Meyer's findings. Although Bruce arranged a telephone conference with Vargas and Meyer to allow Vargas the opportunity to question Meyer, State Farm continued to deny coverage to Vargas, and Vargas alleges that neither State Farm nor Bruce adequately answered her questions, nor sought to have her house reevaluated by an unbiased en-

gineer. On the basis of these events, Vargas filed a lawsuit in Texas state court asserting causes of action against State Farm for breach of contract, breach of duty of good faith and fair dealing, and violation of Article 21.55 of the Texas Insurance Code. Vargas additionally lodges claims against State Farm and Bruce for violations of Article 21.21 of the Texas Insurance Code and Section 17.46 of the DTPA. With specific regard to the claims against Bruce, Vargas avers that Bruce is personally liable for engaging in a slew of unfair insurance practices, including hiring a biased engineer to determine the cause of the foundation damage, failing to disclose the engineer's biased relationship with the insurance industry, failing to effectuate a prompt, fair, and equitable settlement of Vargas' claim, and failing to conduct a reasonable investigation of Vargas' claim.

Defendant State Farm presents markedly disparate facts. While State Farm acknowledges that Bruce issued and signed the May 21, 2001 coverage denial letter, and arranged the telephone conference with Vargas and Meyer, State Farm nonetheless contends that Bruce's involvement with Vargas' claim was merely administrative, such that Bruce played no role in conducting the investigation of Vargas' home or determining whether Vargas' claim should be denied. Instead, State Farm maintains that Vargas' claim was principally handled by Darryl Mayo ("Mayo"), another State Farm insurance adjuster who allegedly selected the plumber and engineer to inspect Vargas' home, engaged in all pre-denial communications with Vargas, signed all pre-denial correspondence sent to Vargas, evaluated all information relevant to Vargas' claim, and ultimately recommended to his team manager, Tom Johnson ("Johnson"), that Vargas' claim be denied. Specifically, State Farm recalls that Vargas first reported her claim to State Farm on March 6, 2001, at which time the claim was immediately assigned to Mayo. Mayo then contacted Vargas by telephone on March 9, 2001 to schedule a plumbing inspection of Vargas' home on March 13, 2001. After the plumbing inspection revealed leaks, Mayo tendered the plumbing inspection report to Vargas, and later forwarded a draft estimate of the repair costs to Vargas. Mayo then retained Meyer to investigate whether the plumbing leaks had caused or contributed to the physical damage of Vargas' home. After inspecting the home, conducting an elevation survey, interviewing Vargas, and taking photographs, Meyer concluded that the plumbing leaks were not related to the damage, and submitted a corresponding report to Mayo on May 7, 2001. On that same day, Mayo reviewed the report, and contacted Vargas to discuss Meyer's conclusions. Mayo subsequently forwarded the report to Vargas, and recommended to Johnson that Vargas' claim be denied. Johnson agreed, and instructed that a coverage denial letter be drafted and sent to Vargas. Following this decision, Johnson reassigned Vargas' file to Bruce, who issued and signed the coverage denial letter informing Vargas of State Farm's decision. Upon receiving Bruce's letter, Vargas sent a letter to Bruce contesting Meyer's findings, and Bruce arranged a telephone conference with Vargas and Meyer on June 29, 2001. State Farm emphasizes, however, that Bruce allowed Vargas to question Meyer directly during this conversation, and did not attempt to filter or screen Vargas' questions or Meyer's answers. Given these facts, State Farm argues that Bruce acted solely at the direction of Johnson in an administrative capacity in processing Vargas' claim, such that Bruce should not be held liable for unfair insurance practices under Article 21.21 of the Texas Insurance Code.

## II.

State Farm removed Vargas' action on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332; § 1441(a). Furthermore, an examination of the face of Plaintiff's Original Petition reveals that no basis exists for federal question jurisdiction pursuant to 28 U.S.C. § 1331. Consequently, for the Court to enjoy subject matter jurisdiction over this removed action, there must exist complete diversity of citizenship between the properly joined Plaintiff and Defendants, 28 U.S.C. § 1332, and no properly joined Defendant may be a resident of the state of Texas, 28 U.S.C. § 1441(b).

In order to invoke diversity jurisdiction under § 1332, the amount in controversy must exceed $75,000, and there must exist complete diversity of citizenship between the properly joined Plaintiff and Defendants. *See* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 3 Cranch 267, 268, 2 L.Ed. 435 (1806). The first requirement for diversity jurisdiction is satisfied because the Parties do not dispute that the amount in controversy exceeds $75,000. With regard to complete diversity of citizenship, the Parties also agree as to the citizenship facts. Plaintiff Vargas is an individual domiciled in Galveston County, Texas, and therefore a Texas citizen. Defendant State Farm is an unincorporated association with Illinois underwriters, and therefore an Illinois citizen. Finally, Defendant Bruce is an individual domiciled in Texas, and therefore a Texas citizen.

Because the Parties concur that both Vargas and Bruce are citizens of the state of Texas, the key inquiry in resolving Plaintiff's Motion to Remand is whether or not Bruce has been properly joined to this action. State Farm contends that Bruce was fraudulently joined to destroy diversity jurisdiction in federal court, and therefore should be dismissed on that ground. If Bruce was fraudulently joined to this lawsuit, then removal is clearly warranted because complete diversity of citizenship exists between Vargas and State Farm. If, on the other hand, Bruce is a proper party to this action, removal jurisdiction would be absent. Specifically, removal would be improper for two reasons: there would not be complete diversity of citizenship between Plaintiff and Defendants as required by 28 U.S.C. § 1332, and at least one Defendant would be a resident of the state in which the removal court sits, contrary to the provisions of 28 U.S.C. § 1441(b).

■ The Court begins by noting that "the burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec.1981). In order to prove that a non-diverse defendant was fraudulently joined in a case to defeat diversity jurisdiction, the removing party must show either that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995). "If the plaintiff has *any* possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law." *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir.1995) (emphasis added).[1]

---

1. The Court recognizes that the Fifth Circuit has on two recent occasions embraced a slightly different standard for evaluating fraudulent joinder claims, specifically implying that the removing party need only show that there is no *reasonable* possibility of recovery against the joined party. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000) (holding that the "party crying foul must show that there is no reasonable proba-

■ Since the Parties do not dispute the citizenship of the various litigants, Defendant is not alleging any fraud in Plaintiff's pleading of any jurisdictional facts. Thus, for Defendant to defeat Plaintiff's Motion for Remand, Defendant must demonstrate "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Sid Richardson,* 99 F.3d at 751 (quoting *Cavallini,* 44 F.3d at 259). In assessing a "no possibility of recovery" fraudulent joinder claim, the Court must evaluate all of the contested factual allegations in the light most favorable to the plaintiff. In addition, the Court must resolve any uncertainties concerning the current status of controlling state substantive law in favor of the plaintiff. *See Sid Richardson,* 99 F.3d at 751; *Burden,* 60 F.3d at 216. "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990); *see also Burden,* 60 F.3d at 216.

The Fifth Circuit has endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims, specifically permitting courts to resolve disputes by "piercing the pleadings" and "considering summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini,* 44 F.3d at 263. However, the Fifth Circuit has also cautioned district courts against "pretrying a case to determine removal jurisdiction." *Id.*

### III.

Although this case admittedly presents a close question, the Court finds that State Farm has failed to carry its heavy burden of proving fraudulent joinder. In buttressing its claim for fraudulent joinder, State Farm argues that Vargas has no possibility of recovery against Bruce in state court, primarily because Texas law does not permit recovery against insurance adjusters generally, and alternatively, because Bruce was not the insurance adjuster who actually investigated or decided Vargas' claim. Based upon a careful review of relevant Texas law and the record before it, the Court disagrees on both counts.

■ Initially, the Court observes that Vargas has no viable causes of action against Bruce for breach of contract or breach of duty of good faith and fair dealing.[2] It is well settled under Texas law that an insurance agent cannot be held liable for breach of contract or breach of duty of good faith and fair dealing absent a contract giving rise to a "special relationship" with the insured. *See Griggs v.*

---

bility of recovery against the joined party"); *Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 286 (5th Cir.2000) (permitting diversity removal if "there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant"). Even more recently, however, the Fifth Circuit has returned to its previously well established "no possibility of recovery" standard. *See Heritage Bank v. Redcom Laboratories,* 250 F.3d 319, 323 (5th Cir.2001). In light of this recent precedent, the court continues to abide by the "no possibility of recovery" standard, but infers a slight reasonableness requirement in applying the standard.

**2.** Although State Farm devotes a significant portion of its brief to this issue, Vargas does not actually assert claims for breach of contract or breach of duty of good faith and fair dealing against Bruce in her Original Petition, nor does she rely upon these causes of action in her Motion to Remand. Instead, Vargas alleges only that Bruce violated Article 21.21 of the Texas Insurance Code and the corresponding provision of the DTPA by engaging in unfair insurance practices.

*State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir.1999); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 697–98 (Tex.1994). However, while the Texas Supreme Court has exempted insurance agents from liability under these two theories, it has imposed liability upon insurance agents and other employees pursuant to Article 21.21 of the Texas Insurance Code. In *Liberty Mutual Insurance Company v. Garrison Contractors, Inc.,* 966 S.W.2d 482 (Tex.1998), the Texas Supreme Court broadly held that any person "engaged in the business of insurance" can be held liable under Article 21.21. *Id.* at 486. In reaching this decision, the *Garrison* court evaluated the text and legislative history undergirding Article 21.21, and ultimately concluded that the term "person" as used in Article 21.21 was not limited to business entities, but rather extended to employees of business entities as well. *Id.* at 485. The court emphasized, however, that "not every employee of an insurance company is a 'person' under Article 21.21 and therefore subject to suit under section 16. To come within the statute, an employee must engage in the business of insurance." *Id.* at 486. While the Texas Supreme Court did not explicitly define the contours of this standard, it did find that the insurance agent in *Garrison* had engaged in the business of insurance, since his job responsibilities included "soliciting and obtaining insurance policy sales and explaining policy terms to prospective buyers" and "explaining premium calculations to consumers." *Id.* By way of contrast, the court noted that "an employee who has no responsibility for the sale or servicing of insurance policies and no special insurance expertise, such as a clerical worker or janitor, does not engage in the business of insurance." *Id.*

■ Based upon the holding in *Garrison,* the Court believes that an insurance adjuster, much like an insurance agent, can be subject to suit under Article 21.21. Although the duties of an insurance adjuster are starkly different from those of an insurance agent, an insurance adjuster nevertheless engages in the business of insurance by investigating, processing, evaluating, approving, and denying claims. In any event, an insurance adjuster's duties cannot properly be classified as merely clerical or janitorial. Even more tellingly, and as also pointed out by the Texas Supreme Court, the text of Article 21.21 itself explicitly lists "adjusters" among those individuals included under the definition of "person." Given the plain language of the statute, as well as the Texas Supreme Court's expansive reading in *Garrison,* the Court is sufficiently satisfied that an insurance adjuster is a person engaged in the business of insurance for purposes of Article 21.21. In making this ruling, the Court aligns itself with a host of other district courts that have held the same.[3]

Having determined that insurance adjusters as a general matter are subject to Article 21.21 liability, the Court must now confront the factual inquiry of whether Defendant Bruce in particular is a person

---

**3.** The district courts in Texas are split on the issue of whether insurance adjusters should be held liable under Article 21.21. For district court cases supporting the imposition of liability, see generally, e.g., *Blanchard v. State Farm Lloyds,* No. Civ.A.H–01–2770 (S.D.Tex. Nov. 27, 2001) (Rosenthal, J.); *Cornman v. State Farm Lloyds,* No. Civ.A.H–01–3266 (S.D.Tex. Nov. 19, 2001) (Atlas, J.); *Rosenauer v. State Farm Lloyds,* No. Civ.A.H–01–

1314 (S.D.Tex. June 28, 2001) (Hittner, J.). For district court cases opposing the imposition of liability, see generally, e.g., *Jones v. State Farm Lloyds,* No. Civ.A.H–01–1505 (S.D.Tex. July 23, 2001) (Werlein, J.); *Ardila v. State Farm Lloyds,* No. Civ.A.H–01–0454 (S.D.Tex. July 16, 2001) (Lake, J.); *Inge v. State Farm Lloyds,* No. Civ.A.H–01–1315 (S.D.Tex. July 3, 2001) (Hughes, J.).

engaged in the business of insurance with respect to Vargas' claim. In its Response and Motion to Dismiss, State Farm attempts to distinguish Bruce from other insurance adjusters who have been found liable in similar cases. Specifically, State Farm argues that Bruce did not substantively act as Vargas' insurance adjuster, since he played no role in hiring the plumber or engineer, investigating or evaluating Vargas' claim, or recommending or deciding to deny Vargas' claim. Instead, State Farm contends that Bruce's function was purely administrative, and that Bruce merely followed the directives of Johnson and State Farm in issuing and signing the coverage denial letter, and in arranging the telephone conference with Vargas and Meyer. State Farm corroborates these allegations with the affidavits of Johnson and Bruce, both of whom allege that Bruce exercised no discretion in handling Vargas' claim. In response, Vargas points to the coverage denial letter issued and signed by Bruce, which details the findings of the plumber's and engineer's investigations, and explains State Farm's reasons for denying Vargas' claim. Vargas also highlights the fact that she sent a letter to Bruce challenging the engineer's report, and that Bruce responded by arranging a telephone conference with Vargas and Meyer, but failed to answer her questions adequately, disclose the engineer's relationship with the insurance industry, or initiate a reevaluation of Vargas' home.

▌ At the outset, the Court emphasizes that it must resolve all factual disputes in Plaintiff's favor in conducting a fraudulent joinder analysis. In this case, State Farm has undoubtedly presented competent summary judgment evidence tending to demonstrate that Bruce had a limited role in processing Vargas' claim. However, despite the compelling evidence presented by State Farm, the Court finds that Vargas has proffered sufficient circumstantial evidence to counter State Farm's allegations. Although Johnson and Bruce aver in their affidavits that Bruce acted solely in an administrative capacity, this notion is called into serious question by the fact that Bruce (*not* Mayo or Johnson) issued and signed the coverage denial letter to Vargas, that Bruce appeared to assume responsibility for the investigation and denial of Vargas' claim in the language of the letter itself, and that Johnson's purported decision to deny Vargas' claim occurred in such close temporal proximity to the reassignment of Vargas' claim to Bruce. First, it is undisputed that Bruce issued and signed the coverage denial letter. This fact, standing alone, is sufficient to raise a reasonable inference that Bruce either directed or contributed to the decision to deny Vargas' claim. More importantly, Bruce appears to assume responsibility for the investigation of Vargas' claim and decision to deny Vargas' claim by the terms of the letter itself. The letter contains innumerable references to previous conversations with Vargas and the hiring of the plumber and engineer, and outlines the precise justifications for the denial of Vargas' claim. Viewed objectively, the letter signed by Bruce tends to show that Bruce was at least partially responsible for the coverage denial decision. Finally, the close temporal proximity between Johnson's supposed decision to deny Vargas' claim and the reassignment of Vargas' claim to Bruce is similarly suspect. Bruce attests that the Vargas file was not assigned to him until May 18, 2001, the same date that Johnson apparently decided to deny Vargas' claim. While Bruce alleges that he merely issued and signed the coverage denial letter at Johnson's behest, the fact that the Vargas file was assigned to Bruce on May 18, 2001, and the coverage denial letter was not dated and mailed until May 21, 2001, indicates that Bruce himself drafted the letter during this three-day window, and

therefore at least cursorily evaluated Vargas' file and the reports contained therein.

Construing all contested allegations in the light most favorable to Plaintiff, then, the Court finds that there exists sufficient evidence to demonstrate that Bruce may have contributed to the investigation of Vargas' claim, including the hiring of the allegedly biased engineer, as well as the ultimate evaluation and denial of Vargas' claim. If this is the case, then Bruce can be held liable to Vargas under Article 21.21 for engaging in unfair settlement practices. While the facts do not support Vargas' allegation that Bruce made material misrepresentations to Vargas, Vargas can possibly show that Bruce failed to conduct a reasonable investigation of Vargas' claim, failed to provide a reasonable explanation for denying Vargas' claim, and failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Vargas' claim. Each of these allegations would constitute a separate and actionable violation of Section 4(10)(a) of Article 21.21. Furthermore, even assuming the complete veracity of State Farm's evidence, Bruce could still be held liable under Article 21.21 for his acts and omissions subsequent to May 18, 2001. After being assigned Vargas' claim on May 18, 2001, Bruce issued and signed a coverage denial letter to Vargas, received a letter from Vargas challenging Meyer's conclusions, and responded to Vargas' letter by arranging a telephone conference with Vargas and Meyer. Notwithstanding the short duration of Bruce's involvement with Vargas, as the insurance adjuster assigned to Vargas' claim as of May 18, 2001, Bruce owed a duty to Vargas to disclose Meyer's alleged bias to Vargas, to respond adequately to Vargas' concerns about Meyer's report, and to conduct any further necessary investigation or reevaluation of Vargas' claim. In short, even if Bruce did not contribute to the hiring of the plumber or engineer, or to the initial denial of Vargas'

claim, he still acted as a person engaged in the business of insurance with respect to Vargas, and therefore is subject to suit under Article 21.21.

In light of the Texas Supreme Court's holding in *Garrison,* and the specific facts of this case, the Court concludes that Vargas can possibly recover against Bruce under Article 21.21 of the Texas Insurance Code. While the Court acknowledges that State Farm has offered significant evidence tending to show that Bruce played a limited role in handling Vargas' claim, the Court is obligated to construe all disputed questions of fact in the light most favorable to Plaintiff, and to resolve any ambiguities in controlling state law in favor of Plaintiff as well. *See Sid Richardson,* 99 F.3d at 751; *Burden,* 60 F.3d at 216. Based upon the *Garrison* court's liberal interpretation of the term "person" to include employees of insurance companies, the Court believes that Article 21.21 clearly contemplates actions against insurance adjusters. Furthermore, although State Farm presents evidence to the contrary, the Court finds that Defendant Bruce is a person engaged in the business of insurance, either because of his apparent direct involvement in investigating and denying Vargas' claim, or alternatively, because of his subsequent acts and omissions as Vargas' insurance adjuster as of May 18, 2001. Under either set of facts, the Court is compelled to conclude that Vargas could conceivably recover against Bruce in a Texas state court for unfair insurance practices in violation of Article 21.21 of the Texas Insurance Code.

## IV.

For all of the reasons set forth above, the Court holds that Defendant Bruce was not fraudulently joined as a party to this action. As such, the presence of Bruce as a properly joined Defendant destroys di-

versity jurisdiction in this case, and the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims under 28 U.S.C. § 1332(a). The Court accordingly hereby **GRANTS** Plaintiff's Motion to Remand, and **REMANDS** this lawsuit to the County Civil Court of Law Number Three of Galveston County, Texas, for **LACK OF SUBJECT MATTER JURISDICTION.** Because Defendant's Motion to Dismiss is predicated upon identical issues of fraudulent joinder, the Court also hereby **DENIES** Defendant State Farm's Motion to Dismiss Fraudulently Joined Defendant.

Additionally, the Court recognizes that Section 1447(c) allows the Court to award just costs and reasonable attorney's fees incurred as a result of an improper removal. *See* 28 U.S.C. § 1447(c). Given the Court's determination that removal was improper, the award of both costs and attorney's fees against Defendant State Farm is permitted in the Court's discretion. *See Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993). While the Fifth Circuit has upheld the awarding of sanctions for improper removal without requiring a finding of bad faith, it has also held that the nonremovability of the action must be obvious. *See News–Texan, Inc. v. City of Garland,* 814 F.2d 216, 220 n. 10 (5th Cir.1987). In the case at hand, it does not appear that State Farm removed this case in bad faith, or that the nonremovability of this case was obvious. Accordingly, because State Farm, although acting in error, arguably had an objectively reasonable basis for removal, the Court hereby **DENIES** Plaintiff's Motion for Costs.

Finally, the Court notes that pursuant to the clear language of 28 U.S.C. § 1447(d), an order remanding a case for lack of subject matter jurisdiction is unreviewable by appeal, mandamus, or otherwise. *See also Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); *Angelides v. Baylor College of Med.,* 117 F.3d 833, 835 (5th Cir.1997); *Linton v. Airbus Industrie,* 30 F.3d 592, 600 (5th Cir.1994); *Tillman v. CSX Transp., Inc.,* 929 F.2d 1023, 1024, 1027 (5th Cir.1991). The Court respectfully defers any unresolved issues to the remand court, and instructs the Parties not to file any further pleadings regarding this lawsuit in this Court, including Motions to Reconsider and the like. Any and all further relief should be sought from the remand court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**