**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-40883.

Jesus RODRIGUEZ; Maria Rodriguez; Jesus Reyes; Yolanda Reyes, Plaintiffs-Appellants,

v.

Anthony SABATINO; Sonja Sosa; Borg-Warner Protective Services Corporation doing business as Wells Fargo Guard Services, Defendants-Appellees.

Sept. 3, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES, EMILIO M. GARZA and PARKER, Circuit Judges.

PER CURIAM:

The district court denied the plaintiffs' motion to remand because it determined that they had fraudulently joined two defendants. Hence, it had diversity jurisdiction under 28 U.S.C. § 1332(a). Subsequently, the district court granted the defendants' summary judgment motion, dismissing the plaintiffs' complaint. On appeal, the plaintiffs contend that the district court lacked subject matter jurisdiction over their case. We affirm.

I

On December 12, 1992, Maria Reyes ("Maria"), Jorge Rodriguez ("Jorge"), and Francisco Sanchez went to a quincinera hosted by Maria and Mario Mora at the Magnolia Civic Center, a property owned by the City of Houston. The quincinera lasted from about 8:00 p.m.

1

until 12:00 a.m. Borg-Warner Protective Services, Inc. d/b/a Wells Fargo Guard Services ("Wells Fargo") provided security for the event pursuant to a contract between Wells Fargo and the City of Houston. Wells Fargo assigned one of its employees, Sonia Sosa, a citizen of Texas, to work as a security guard at the party. As part of her duties, Sosa patrolled the building to prevent vandalism and watched over the parking lot to thwart automobile thefts. She did not check the identification of anyone consuming alcohol at the party or otherwise monitor the serving of alcohol there.

There was apparently some underage drinking at the quincinera. Mario Mora admitted, for instance, that he "sneaked" two cups of beer to Sanchez around 10:30 p.m. At midnight, the party moved over to the Mora residence. Sanchez, Jorge, and others consumed alcohol there with Mario Mora.

After spending a couple of hours at the Mora residence, Sanchez, Jorge, Maria, Angelica Aguilar, Oscar J. Medina, and Martha Perez left in Sanchez's pickup truck. At approximately 4:24 a.m., Sanchez's truck jumped the curb, spun up an embankment, and smashed into the underside of a highway overpass. Everyone was killed, except for Perez. Police officers at the scene found beer cans in the car and noticed that the vehicle emitted a strong odor of alcohol.

The Texas Alcoholic Beverage Commission ("TABC") investigated the accident. It filed charges against Mario Mora for making alcohol available to minors but not against Sosa, Wells Fargo, or

2

the City of Houston.

After the accident, Jorge and Maria's respective parents, citizens of Texas, filed a complaint in state court against Wells Fargo, Sosa, and, Sosa's supervisor, Anthony Sabatino,[1] alleging, among other things, that all three were citizens of Texas. The defendants removed the case to federal district court, and then the plaintiffs moved to remand.

The district court determined that Wells Fargo was not a citizen of Texas, and that Sabatino and Sosa had been fraudulently joined. Because complete diversity existed, the court denied the plaintiffs' motion to remand. The plaintiffs then filed a writ of mandamus in this court, arguing that the district court erred. We denied the writ. Subsequently, the district court granted the defendants' motion for summary judgment, dismissing the plaintiffs' complaint.

On appeal, the plaintiffs contend that the district court erred in determining that they fraudulently joined Sosa and thus in concluding that it had subject matter jurisdiction under 28 U.S.C. § 1332(a).

II

We review *de novo* a denial of remand to state court. *Sid*

---

[1]Apparently, Sabatino worked in Wells Fargo's Metuchen, New Jersey office at the time of the accident. In May 1994—a year and a half after the accident—Wells Fargo transferred him to its Houston office.

The plaintiffs do not discuss Sabatino at all in their brief. Clearly, he has nothing to do with this case. Thus, we will limit our analysis in this opinion to the issue of whether the plaintiffs fraudulently joined Sosa.

*Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746, 751 (5th Cir.1996). A party invoking the removal jurisdiction of the federal courts bears a heavy burden. *Id.* To prove that non-diverse parties have been fraudulently joined in order to defeat diversity, the removing party must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts," *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995), or that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995). The defendants do not allege outright fraud, so only the second rule is at issue here. In this regard, we "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205-06 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984).

In evaluating a claim of fraudulent joinder, we do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff may do so. *Burden,* 60 F.3d at 216. The question, then, is simply whether the defendant can show that no possibility exists that the plaintiffs have stated a claim against

4

Sosa.

The Texas Supreme Court has stated that common-law negligence "consists of three essential elements—a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). "Duty is the threshold inquiry ...," and the "foremost and dominant consideration" in determining whether a duty exists is the "foreseeability of the risk." *Id.* An alcoholic beverage licensee, for instance, has a duty not to serve alcohol to an intoxicated person whom the licensee knows will probably drive a car. *Id.* Also, a person has a duty to take affirmative action to control or avoid increasing the danger from another's conduct which the actor has at least partially created. *Id.* The general rule, though, is that a person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control. *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983).

In this case, the evidence indicates that Sanchez had been drinking a little at the quincinera and that Mario Mora sneaked him two beers there. In contrast, Sosa was not serving alcohol or even checking identification. While Sosa testified that she observed underage drinking and stopped at least one minor from drinking, there is no indication that her job required her to prevent such conduct.

In addition, we do not think that the evidence demonstrates that Sosa even partially increased the danger that Sanchez would

5

crash his truck, killing himself and four others. First, Mario Mora has admitted sneaking Sanchez two beers. In fact, the TABC actually charged Mora with violating § 106.06 of the Texas Alcoholic Beverage Code by giving beers to minors. Conversely, Sosa did nothing to facilitate underage drinking. Second, the accident did not occur until almost four-and-a-half hours after Sanchez left the quincinera, and there is proof that Sanchez was drinking at the Mora residence during at least part of this period. Given the fact that Sosa locked up the Magnolia Civic Center shortly after midnight, effectively ending the quincinera, we do not think that she did anything or failed to do anything that contributed to the 4:24 a.m. crash. Sosa had no common-law or other duty to Maria or Jorge, the exercise of which would have prevented this tragedy.

Because Sosa lacked a duty to Maria or Jorge, absolutely no possibility exists that the plaintiffs can state a claim against Sosa. Therefore, the defendants have shown that the plaintiffs fraudulently joined Sosa. Accordingly, there is complete diversity in this case and the district court had subject matter jurisdiction under 28 U.S.C. § 1332(a).

AFFIRMED.