IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-21024
_____

PARKWAY IMAGING CENTER, INC. AND QUANTUM MRI
& DIAGNOSTIC CENTER, INC.'S LIFE ACCIDENT AND
HEALTH BENEFIT PLAN; PARKWAY IMAGING CENTER,
INC.; QUANTUM MRI & DIAGNOSTIC CENTER, INC.,

                                        Plaintiffs-Appellants,

versus

HOME LIFE FINANCIAL ASSURANCE CORPORATION;
HOME LIFE GROUP BENEFITS AND SERVICES, INC.;
DENNIS R. GREENSAGE; D. R. GREENSAGE & ASSOCIATES, INC.,

                                        Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-4250)
_____

September 27, 1999

Before REAVLEY, JOLLY, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

I

A

On February 1, 1992, the appellants, Parkway Imaging Center,
Inc. and Quantum MRI & Diagnostic Center, Inc.'s Life, Accident,
and Health Benefit Plan; Parkway Imaging Center, Inc.; and Quantum
MRI & Diagnostic Center Inc. (collectively, "Quantum") adopted a
self-funded employee benefits plan (the "Plan") under the Employee

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Retirement Income Security Act, 29 U.S.C. § 1001, <u>et seq</u>. ("ERISA"). The appellees, Home Life Financial Assurance Co. and Home Life Group Benefits and Services, Inc. (collectively, "Home Life"), administered and reinsured the Plan.

Under the terms of the parties' Administrative Services Agreement (the "Agreement"), also entered into on February 1, 1992, Home Life processed and paid all eligible employee claims covered by the Plan, subject to qualified reimbursement from Quantum. The Agreement required Quantum to remit payment to Home Life on reimbursed claims within ten days after the billing date. Quantum's failure to meet this obligation could trigger termination of the Agreement.

During the same time the parties entered into the Agreement, Quantum also purchased a stop-loss reinsurance policy from Home Life. Appellee Dennis Greensage of D.R. Greensage & Associates, Inc. ("Greensage") negotiated the terms of the stop-loss policy and was also the policy's agent of record. Quantum first requested a fully insured policy that would pay all covered employee benefits claims under the Plan. Quantum maintains that Greensage and Home Life persuaded it to purchase the stop-loss policy, which only paid employee claims in excess of Quantum's deductible under the policy. Both the Agreement and the stop-loss policy were subject to renewal on February 1, 1993.

In September 1992, Quantum became dissatisfied with its coverage under the policy. Consequently, Quantum informed

Greensage that it wished to convert the stop-loss policy into a fully insured policy. Greensage responded that in the light of the February 1, 1993 renewal date, "it was too late" to switch the Plan's insurance coverage. Quantum then discussed the issue with Home Life, which also stated that the stop-loss policy could not be converted prior to its renewal. At this point, Quantum became convinced that Greensage, with Home Life's assistance, had purposely refused to honor its conversion request because of the commission Greensage stood to earn under the stop-loss policy. Therefore, on January 13, 1993, over Home Life's objection, Quantum terminated Greensage as agent of record and hired a replacement, Stacey Merritt. Notwithstanding, in February 1993, Quantum renewed, without modification, the Agreement and its limited reinsurance coverage under the stop-loss policy.

Starting in September 1993, relations between the parties became acrimonious. From this date, Quantum refused to pay Home Life premiums or reimburse claims on the basis that Home Life had failed to honor its obligation to provide Quantum a fully-insured policy. In response, Home Life informed Quantum that its stop-loss policy had lapsed, and demanded payment of outstanding premiums and delinquent reimbursement payments. Subsequently, the parties agreed to reinstatement of the policy based on a schedule of payments to be made by Quantum to Home Life (the November 1993 Agreement). But this agreement fell apart based on Quantum's assertion that Home Life thereafter only selectively paid its

3

employees' claims for medical benefits under the Plan. Quantum stopped making payments under its previous agreement and with respect to continuing coverage. In December 1993, Home Life notified Quantum that it was terminating the policy retroactive to September 30, 1993, and submitted a final accounting to Quantum for $37,656.57. Quantum refused to pay the outstanding balance on the stop-loss policy.

B

In September 1994, Home Life filed suit against Quantum in the county court of Harris County, Texas, to recover the $37,656.57. Specifically, Home Life alleged that Quantum breached the parties' February 1992 Agreement, and breached its fiduciary duty owed under the Agreement when it failed to pay the premiums and the claims for reimbursement owed under the stop-loss policy. Quantum entered a verified denial to the suit and, in doing so, pled several affirmative defenses: anticipatory breach; fraud in the inducement; misrepresentation; bad faith; privilege; and failure to meet conditions precedent.

On August 3, 1995, while the Harris County court suit was still pending, Quantum filed suit against Home Life and Greensage in the Texas State District Court of Harris County, Texas. In its original petition, Quantum alleged numerous causes of action against the appellees/defendants: (1) unfair insurance practices in violation of the Texas Insurance Code, art. 21.21, §§ 4 and 16; (2) deceptive trade practices in violation of the Deceptive Trade

4

Practice Act ("DTPA"); (3) violation of the duty of good faith and fair dealing; (4) fraudulent misrepresentation; (5) breach of contract; and (6) negligence and gross negligence. Quantum alleged that it and Greensage were both Texas corporations, and that Home Life was a foreign corporation, maintaining its home office in the state of New Jersey. The factual allegations underlying Quantum's claims related to Home Life's performance of its obligations under the February 1992 Agreement, the Agreement as renewed in February 1993, and the November 1995 agreement. Finally, Quantum requested damages minimally in the amount of $115,000--the sum of the unpaid employee benefits claims that Home Life refused to pay from September 30, 1993 until December 6, 1993.

On August 25, 1995, Home Life removed the case to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1446(a) and (b). Home Life alleged that removal was proper on the basis of federal question jurisdiction under the ERISA, and on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Home Life contended that Quantum had fraudulently joined Greensage to defeat diversity jurisdiction, as each of Quantum's claims against it were time barred.

After initial proceedings before a magistrate judge,[1].Quantum's amended complaint was later stricken by the

---

[1]On October 25, 1997, Quantum moved the district court, a magistrate judge presiding, to remand the cause back to the state district court of Harris County, Texas. In its October 27, 1995 amended motion to remand, Quantum argued, inter alia, that its

magistrate judge on January 31, 1996. The magistrate judge ruled that Quantum had erroneously been ordered to file an amended complaint under ERISA for a cause of action not provided therein.[2] Greensage moved for summary judgment on Quantum's state law claims against it under the Texas Insurance Code and the DTPA. Greensage argued that Quantum had failed to bring its claims within the applicable two-year statute of limitations period. Greensage contended that Quantum's claims accrued, and, therefore, the statute of limitations began to run no later than February 1, 1993. Therefore, Quantum's claims filed on August 7, 1995, were untimely. Greensage also moved the court to retain diversity jurisdiction over the case under 28 U.S.C. § 1332. Building on its earlier argument that Quantum's claims against it were untimely, Greensage argued that it had been fraudulently joined in the action, and, therefore, its residence should not be counted in determining the citizenship of the parties.

On May 28, 1997, the district court ruled on the ERISA preemption issue and on each of Greensage's January 9, 1997 motions. The district court concluded that ERISA did not preempt Quantum's Texas state law claims against Home Life and Greensage. The district court further ruled that Greensage had been fraudulently joined, as Quantum's claims against it were time-barred, and that it retained diversity jurisdiction over the case. The district court therefore granted Greensage's motion for summary judgment and dismissed it from the action with prejudice. Thus, Home Life remained the only party/defendant in the federal action.

During the parties' litigation in federal court, Home Life's August 3, 1995 suit remained on the active docket of the Harris County court. On September 4, 1997, the Harris County suit was called to trial. Quantum's attorney also appeared but moved to withdraw as counsel on the grounds of a conflict of interest. The Harris County court granted the withdrawal motion and Quantum made

---

state law claims were not completely preempted by ERISA. Quantum further argued that no diversity jurisdiction existed as Greensage, a non-diverse defendant, was a resident of Texas--the forum state. The magistrate judge denied Quantum's motion to remand, concluded that its claims were completely preempted by ERISA, and ordered Quantum to re-plead its claims under ERISA. Quantum filed its first amended complaint under ERISA on January 25, 1996.

On December 10, 1996, the case was released from the docket of the magistrate judge and set for trial in February 1997. The district court, however, informed the parties that the magistrate judge's order constituted "serious legal error" and that it would decide sua sponte whether Quantum's Texas state law claims were completely preempted under the ERISA.

6

no further appearance in the Harris County suit.  On September 16, 1997, the Harris County court entered a default judgment in favor of Home Life and the Texas Children's Hospital, awarding Home Life $37,656.67 and intervenor Texas Children's Hospital $51,875.80. The  court also awarded attorney's fees to both parties.

After the judgment in its favor in the Harris County court, Home Life filed a supplemental motion for summary judgment in the district court action.  In its motion, Home Life asserted the defense of res judicata and moved the district court to accord preclusive effect to the Harris County judgment.  Home Life argued that Quantum's federal claims against it arose out of the same agreement at issue in the Harris County suit, Quantum's federal claims were the same as its defenses pled in the prior suit, and both the state and federal actions involved the same subject matter.  On November 24, 1997, applying the federal doctrine of res judicata, the district court granted Home Life's motion and entered a take-nothing judgment in its favor.

Quantum timely appealed the district court's grant of summary judgment in favor of Greensage, on the grounds of fraudulent joinder and its grant of summary judgment in favor of Home Life.

II

A

On appeal, Quantum argues that in granting summary judgment in favor of Home Life, the district court erred in applying the federal doctrine of res judicata because the preclusive effect of a state court judgment is determined by state law.  Quantum further argues that under the Texas law of res judicata, the Harris County court judgment is not binding in federal court.  Citing Barr v. Resolution Trust Co., 837 S.W.2d 627, 631 (Tex. 1992), Quantum contends that in according a judgment preclusive effect, Texas courts follow the transactional approach:  "[A] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence could have been litigated in a prior suit."  Quantum maintains that as a defendant in the Harris County suit, it could not have litigated its federal claims as counterclaims because the amount in controversy in the federal suit exceeded the statutory jurisdictional limits of the Harris County court.  Quantum therefore argues that its federal action against Home Life is not subject to claim preclusion.

B

(1)

We review de novo the district court's grant of summary judgment.  See  Matador Petroleum Co. v. St. Paul Surplus Lines Insurance Co., 174 F.3d 653, 656 (5th Cir. 1999) (citations omitted).  We also review de novo the district court's decision to accord full faith and credit to a prior state court judgment.  See In re Miller, 156 F.3d 598, 601 (5th Cir. 1998) (citations and internal quotations omitted).

7

Quantum correctly asserts that the preclusive effect, if any, of the Harris County judgment is determined by Texas state law. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996) (citing Kremer v. Chemical Constr. Co., 456 U.S. 461, 481–82 (1985)); Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd., 99 F.3d 746, 756 (5th Cir. 1996). We likewise agree that Texas courts follow the transactional approach to claim preclusion as provided in the Restatement (Second) of Judgments § 24.[3] See Jones v. Nightingale, 900 S.W.2d 87, 88 (Tex.Civ.App. 1995, writ ref'd) (citing Barr, 837 S.W.2d at 631). Therefore, a movant asserting the defense of res judicata under Texas law has the burden of proving: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. See Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996) (citing Texas Water Rights Comm'n v. Crow Iron Works, 582 S.W.2d 768, 771–72 (Tex. 1979)).

Although not phrased by Quantum as such, the dispositive issue is whether, for the purposes of res judicata, the Harris County court constitutes a court of competent jurisdiction. To qualify as a court of competent jurisdiction, a Texas county court must have jurisdiction over the subject matter as well as the amount in controversy. See Smith v. Clary Co., 917 S.W.2d 796, 798 n.1 (Tex. 1996). Texas county courts have jurisdiction in "civil cases in which the amount in controversy exceeds $500.00 but does not exceed $100,000.00, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition." Tex. Gov't Code Ann. § 25.0003(c)(1). A counterclaim is treated as a separate suit under Texas law, and, as such, it must independently comply with a county court's jurisdictional limits. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1339 (5th Cir. 1996)(citing Color Tile, Inc. v. Ramsey, 905 S.W.2d 620, 623 (Tex.Civ.App. 1995, n.w.h.) (other citations omitted). To determine whether a counterclaim is within the jurisdiction of a county court, we look to the amount in controversy at the time of the original pleading. See Smith v.

_____

[3]The Restatement (Second) of Judgments § 24(1) provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. The Restatement further instructs that a "transaction" is determined pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. at § 24(2).

Texas Improvement Co., 570 S.W.2d 90, 92 (Tex.Civ.App. 1978, no writ) (citations omitted).

As previously stated, Home Life removed Quantum's suit filed in Texas state district court to federal district court. Therefore, for the purposes of our jurisdictional inquiry, we regard Quantum's original petition filed in Texas state district court as the "original pleading." On the face of its original petition, Quantum affirmatively pled damages in excess of $115,000. Thus, under § 25.0003(c)(1), the Harris County court lacked jurisdiction to hear Quantum's federal claims if pled as counterclaims in the Harris County suit. The Harris County court would have dismissed those counterclaims in excess of its $100,000 jurisdictional limit. See Kitchen Designs, Inc. v. Wood, 584 S.W.2d 305, 307 (Tex.Civ.App. 1979, writ ref'd n.r.e.). Accordingly, for the purposes of res judicata, the September 17, 1997 Harris County court judgment does not constitute a judgment from a court of competent jurisdiction. In short, Home Life has not carried its burden of establishing each of the requisite elements of claim preclusion.

(2)

Home Life responds that notwithstanding the limited jurisdiction of the Harris County court, Quantum raised the same claims, albeit as affirmative defenses, in the Harris County suit that it now seeks to litigate in federal district court. Home Life therefore argues that because the Harris County court decided these affirmative defenses adversely to Quantum, it should be precluded from re-litigating them in federal court.

The factual allegations made in Quantum's defensive pleadings in the Harris County suit are indeed the same as those alleged in its original petition in the Texas state district court suit later removed to federal court. We have held that, under Texas law, res judicata precluded a subsequent federal action where the charges in the appellant's federal complaint mirrored those defensive allegations raised by it in the prior state court action, and both suits arose out of the same subject matter. See Sheehan, 82 F.3d at 1342-43. Moreover, an appellant is precluded from pursuing in federal district court the exact claims that were previously decided adversely to him in the county court action. Id. at 1341. But Sheehan stands on a different procedural footing than the present appeal; therefore, its principles are not controlling here. In applying Texas' law on claim preclusion, the Sheehan court expressly noted that the appellant failed to plead affirmatively damages in excess of the jurisdictional limits of the Texas county court, and, therefore, the county court could have properly exercised jurisdiction over his counterclaims. Id. at 1340. This initial finding of jurisdiction—one that cannot be made on the facts of this appeal—was predicate to the court's application of the doctrine of res judicata.

In any event, we find a second jurisdictional bar exists to the application of claim preclusion in this case. As we have previously discussed, the Harris County court is a statutory court of limited jurisdiction. See § 25.0003(c)(1). Under Tex. Civ. Prac. & Rem. § 31.004(a), the Texas state legislature modified the common law doctrine of res judicata so that only those claims that were actually litigated in a court of limited jurisdiction are given preclusive effect. See Sheehan, 82 F.3d at 1341 n.7 (citing Webb v. Persyn, 866 S.W.2d 106, 107 (Tex.Civ.App. 1993, no writ)). Thus, claims that could have been litigated in a Texas county court but were not are not subject to claim preclusion. Id. As our earlier discussion makes clear, Quantum's claims against Home Life were not, and, indeed, could not have been litigated in the Harris County court. Hence, under § 31.004(a), Quantum is not bound by the Harris County court judgment in federal district court.

We therefore conclude that the district court erred in according preclusive effect to the September 16, 1997 Harris County court judgment under the federal doctrine of res judicata.

### III
#### A

In its final argument on appeal, Quantum contends that the district court erred in concluding that Greensage had been fraudulently joined. Quantum advances several arguments in support of its position. First, Quantum argues that in deciding the fraudulent joinder issue, the district court failed to resolve a disputed issue of fact in its favor--that it did not discover its cause of action against Greensage until December 1993. Second, Quantum argues that instead of taking this allegation as true, the district court impermissibly relied on the affidavit testimony of Mark Latham and erroneously concluded that its claims against Greensage accrued in January 1993. Third, Quantum complains that the district court failed to consider whether, under the discovery rule, it was "possible" that Quantum could maintain its state law claims under the Texas Insurance Code and the DTPA. Finally, at oral argument, citing Giles v. NYLcare Health Care Plans, Inc., 172 F.3d 332 (5th Cir. 1999), and McClelland v. Grunwald, 155 F.3d 507 (5th Cir. 1998), Quantum alternatively contended that when the district court concluded that its claims were not completely preempted by ERISA, the district court lacked jurisdiction to rule on Greensage's statute of limitations defense. If so, the district court should have remanded the case back to Texas state district court.

#### B
##### (1)

We review the district court's denial of a remand to state court de novo. See Rodriguez v. Sabatino, 120 F.3d 589, 591 (5th Cir. 1997), cert. denied, 118 S.Ct. 1511 (1998) (citations omitted). A party invoking the removal jurisdiction of the federal courts bears a heavy burden. Id.; Richardson, 99 F.3d at 751

10

(citations omitted). To establish that a plaintiff has fraudulently joined a non-diverse party in an attempt to defeat diversity jurisdiction, the removing party must demonstrate "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court."[4] <u>Id.</u>

In reviewing a claim of fraudulent joinder, we employ a summary judgment-like procedure. <u>See</u> <u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) (citing <u>Carriere v. Sears, Roebuck & Co.</u>, 893 F.2d 98, 100 (5th Cir. 1990). We consider the factual allegations contained in the plaintiff's state court pleadings and we may also elect to "pierce the [plaintiff's] pleadings" to consider other summary judgment-type proof, such as affidavit and deposition testimony. <u>See</u> <u>Cavallini</u>, 44 F.3d at 263 (citations omitted). All contested issues of fact and all ambiguities in controlling state law are resolved in favor of the plaintiff--the non-removing party. <u>See</u> <u>Rodriquez</u>, 120 F.3d at 591 (citations omitted); <u>Richardson</u>, 99 F.3d at 751 (citations omitted). Notwithstanding our use of a summary judgment-like procedure, our evaluation of a fraudulent joinder claim does not contemplate a judgment on the merits of the plaintiff's underlying state law claims; we do not consider whether the plaintiff will actually or even probably prevail on the claims. <u>See</u> <u>Richardson</u>, 99 F.3d at 751. Instead, our focus is the much lesser inquiry of whether there exists *any possibility* that the plaintiff may prevail. <u>Id.</u> (Emphasis added.)

Finally, we note that the expiration of an applicable statute of limitations is an affirmative defense. We have previously held that should the defendant establish the existence of an affirmative defense to the plaintiff's state law claims, "it necessarily follows that joinder was fraudulent, and the district court properly exercised its removal jurisdiction." <u>Id.</u> at 753. <u>See also</u> <u>LeBlang Motors, Ltd. v. Subaru of America, Inc.</u>, 148 F.3d 680, 690-92 (7th Cir. 1998) (holding district court properly dismissed claim as fraudulently joined where the statute of limitations for fraud under Illinois state law had run against the defendants). However, if there exists any possibility that the plaintiff might survive the affirmative defense, we must vacate the district court's judgment of fraudulent joinder and remand the cause to state court. <u>See</u> <u>Richardson</u>, 99 F.3d at 753.

---

[4]The removing party may also establish fraudulent joinder by demonstrating "outright fraud in the plaintiff's recitation of jurisdictional facts." <u>Rodriquez</u>, 120 F.3d at 591 (citing <u>Burden v. General Dynamics Co.</u>, 60 F.3d 213, 217 (5th Cir. 1995)). Greensage has not advanced this theory of fraudulent joinder on appeal.

Applying these standards, we conclude that no possibility exists that Quantum could have prevailed on Greensage's statute of limitations defense under Texas law. In its original petition filed in Texas state district court on August 7, 1995, Quantum pled causes of action against Greensage under the Texas Insurance Code, art. 21.21 §§ 4 and 16, and the DTPA, Tex. Bus. & Com. Code § 17.50, et seq. Quantum alleged, inter alia, that in violation of both the insurance code and the DTPA, Greensage misrepresented: (1) the propriety and appropriateness of the administrative services agreement and the stop-loss policy; (2) the ease and/or possibility of converting the stop-loss policy into a fully insured policy; and (3) its ability and/or willingness to convert the stop-loss policy into a fully insured policy. Quantum further charged that, despite Greensage's representations and assurances as to the appropriateness of the stop-loss policy, it was forced to pay deductibles grossly in excess of that required under a fully-insured policy. Finally, Quantum contended that because of its desire to protect the residual premium payments it earned under the stop-loss policy, Greensage delayed renewal of the policy until it was too late to honor Quantum's conversion request.

In concluding that Greensage had been fraudulently joined, the district court found that, based on the affidavit testimony of Mark Latham, Quantum knew or should have known the nature of its claims against Greensage by January 1993, when it terminated Greensage as agent of record for the stop-loss policy and replaced him with Stacey Merritt. The district court therefore concluded that under the two-year statute of limitations applicable to the Texas Insurance Code and the DTPA, Quantum's August 7, 1995 claims against Greensage were untimely. We agree.

The DTPA provides that "all actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. . . ." Tex Bus & Com. Code § 17.565. The Texas Insurance Code similarly instructs that a claim must be brought "within two years after the person bringing the action discovered or in, the exercise of reasonable diligence, should have discovered the occurrence of the . . . unfair or deceptive act or practice." Tex. Ins. Code. Ann. art. 21.21 § 16(d).

In his May 6, 1996 supplemental affidavit submitted in response to Greensage's motion for summary judgment, Michael Latham[5] made the following allegations: On February 1, 1992, Greensage persuaded Quantum to purchase the stop-loss reinsurance

_____

[5]From 1992-1994, Latham was Quantum's assistant administrator and was responsible for maintaining the insurance on the Plan.

policy; in late 1992, Quantum became concerned about its payment of large deductibles under the policy and instructed Greensage to switch its coverage to a fully-insured policy; Greensage refused to comply with the request and instead engaged in delay tactics to thwart conversion of the policy; then, in late 1992 and early 1993, Greensage stated that it was too late to convert the stop-loss policy into a fully-insured policy prior to the February 1, 1993 renewal date, but that the coverage would be changed after the policy was renewed; during that time, Greensage also represented that the stop-loss policy was the most appropriate policy for Quantum's employee benefits plan, was an affordable policy, and would in the long run, save more money in comparison to fully-insured policy; nonetheless, Quantum was extremely frustrated with its inability to obtain assistance from Greensage and, consequently, on January 13, 1993, replaced him as agent of record for the policy with Stacey Merritt; finally, as a direct result of Greensage's fraudulent misrepresentations, Quantum was forced to renew the stop-loss policy in 1993.

The record shows further that in his December 8, 1995 deposition, Don Ballard, Quantum's executive vice president, testified that in September 1992, Quantum knew that (1) the stop-loss policy was inappropriate for a company of its size; (2) the policy was putting a financial strain on the company; (3) it should not have had such limited coverage "in the first place"; (4) Greensage was the blame for the company's purchase of the policy; and, therefore, (5) he should be terminated. Similar to Latham, Ballard further testified that when Quantum first contacted Greensage in September 1992 to convert to a full-coverage policy, Greensage failed to respond to its questions and requests for information, failed to return Quantum's phone calls, neglected to supply it with the appropriate documentation regarding a full-coverage policy, and stalled for time by giving it the "runaround." Ballard also stated that because of commissions it stood to earn from the stop-loss policy, Greensage was not responsive to Quantum's need for a fully-insured policy. Finally, Ballard testified that after Greensage was terminated as agent of record on January 13, 1993, he made no further decisions on behalf of Quantum. Notably, it was Ballard who made the decision to file suit against Greensage in 1995.

Even when construed in the light most favorable to Quantum, this evidence establishes that by January 1993, Quantum knew or should have known of the facts giving rise to its claims against Greensage under the Texas Insurance Code and the DTPA. Hence, Quantum's causes of action accrued on this date. Accordingly, at the time of the filing of its original petition, August 7, 1995, Quantum's claims were time barred. In reaching this end, we emphasize that the district court's obligation to assume all facts alleged by the plaintiff to be true is not so expansive as to require the district court to disregard the uncontroverted evidence

existing outside of the plaintiff's allegations.  The district court's responsibility here is simply to resolve disputed facts in favor of the plaintiff.  <u>See</u> <u>Burden</u>, 60 F.3d at 217.

(2)

Quantum does not dispute Latham and Ballard's testimony, but instead contends that under the discovery rule, the statute of limitations should be tolled until December 1993.  Quantum maintains that Greensage's continuing misrepresentations made it impossible to discover its deceptive insurance practices until December 1993, when it arbitrarily terminated the stop-loss policy and caused the Plan to collapse.

Quantum's argument is unavailing.  Although by its terms, the DTPA has incorporated the discovery rule into its two-year limitation period,[6] <u>see</u> <u>Bell v. Showa Denko K.K.</u>, 899 S.W.2d 749, 753 (Tex.Civ.App. 1995, writ denied), for the purposes of tolling the statute of limitations under the discovery rule, the controlling question is simply "whether the plaintiff had knowledge of facts, which would cause a reasonable person to diligently make inquiry to determine his or her legal rights." <u>Id.</u> at 754.  By its own admissions, Quantum knew no later than January 1993 that it had allegedly suffered economic harm because of Greensage's purported fraudulent misrepresentations and deceptive conduct.  At best, it was not until December 1993 that Quantum learned the full extent of the damages Greensage purportedly caused--its alleged loss of $115,000 in unpaid employee benefits under the stop-loss policy. Under the discovery rule, however, that the total amount of party's damages are not immediately discernable does not toll the statute of limitations.  <u>See</u> <u>Cornerstones Mun. Utility v. Monsanto Co.</u>, 889 S.W.2d 570,  (Tex.Civ.App. 1994, writ denied) (citing <u>Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.</u>, 866

---

[6]Under Texas law, the discovery rule provides that the limitation period for a tort claim involving an injury of which the plaintiff could not, and did not, know at the time it occurred, does not begin to run until the injury done to the plaintiff is discovered, or until the party acquires knowledge of facts which, in the exercise of reasonable diligence, would lead to the discovery of the injury. <u>See</u> <u>Moreno v. Sterling Drug, Inc.</u>, 787 S.W.2d 348, 351 (Tex. 1990).  It is not necessary that a party know the details of the evidence by which to establish his cause of action for it is enough that he knows a cause of action exists in his favor.  <u>Id.</u> at 754.  When a party learns of the existence of the cause of action, he or she must avail himself of those means that the law provides for prosecuting or preserving the claim.  <u>Id.</u> (citing <u>Hoover v. Gregory</u>, 835 S.W.2d 668, 671 (Tex.Civ.App. 1992, writ denied)).  Thus, the discovery rule expressly mandates that the plaintiff exercise reasonable diligence to discover facts of negligence or omission. <u>Id.</u> (citations omitted).

14

S.W.2d 740, 744 (Tex.Civ.App. 1993, writ denied); <u>Johnson v. Walker</u>, 824 S.W.2d 184, 187 (Tex.Civ.App. 1991, writ denied) (citing <u>Wichita Nat'l. Bank v. United States Fidelity & Guar. Co.</u>, 147 S.W.2d 295, 297 (Tex.Civ.App. 1941, no writ)).

(3)

We likewise reject Quantum's argument under <u>McClelland</u> and <u>Giles</u> that once the district court decided that its claims were not completely preempted under ERISA, the court lacked subject matter jurisdiction to rule upon the Texas state law statute of limitations issue.

After a brief review of the relevant procedural history, we are satisfied that the district court properly exercised diversity jurisdiction over Quantum's state law claims and, in turn, Greensage's statute of limitations defense. On December 10, 1996, the district court advised the parties that the magistrate judge's ruling, which ordered Quantum to re-plead its state law claims under the ERISA, constituted a "serious legal error" and that it would resolve the preemption issue <u>sua sponte</u>, upon further briefing by the parties. In doing so, the district court explained its probable jurisdiction as follows: If ERISA completely preempted Quantum's state law claims, the case should be dismissed for failure to state a claim for which relief could be granted. However, if ERISA did not completely preempt the claims, the case should be remanded to state court, as the district court lacked subject matter jurisdiction over the purely state law action. In response, Greensage moved the district court to retain jurisdiction over the case under 28 U.S.C. § 1332, on the grounds of diversity jurisdiction. Greensage argued that in its original petition filed in Texas state district court, Quantum alleged that it was a resident of Texas, Home Life was a foreign corporation, and that the amount in controversy--$115,000--exceeded the $75,000 statutory limit of § 1332 (a). Greensage further argued that Quantum had fraudulently joined it in the action and, therefore, for the purposes of determining the citizenship of the parties, the state of its principal place of business (Texas) should not be counted. Thus, on May 27, 1997, the district court had, <u>inter alia</u>, two issues before it: (1) the ERISA preemption and jurisdictional issues raised by the court <u>sua sponte</u>; and (2) Greensage's motion to retain jurisdiction.

In ruling upon the motions, the district court first concluded that Quantum's state law claims were not completely preempted under ERISA. Turning to the question of its jurisdiction, the district court held that depending on its resolution of the fraudulent joinder issue, it either retained diversity jurisdiction over Quantum's state law claims, or it retained no subject matter jurisdiction over the case. The district court then concluded that Greensage had been fraudulently joined, and, therefore, it retained jurisdiction over Quantum's state law claims under § 1332. Because the district court's exercise of jurisdiction in this case was

properly based upon § 1332 (diversity of citizenship), not § 1367 (supplemental jurisdiction), neither <u>McClelland</u> nor <u>Giles</u> are relevant to the instant appeal. The issue in both of those cases was whether the district court could properly exercise supplemental jurisdiction over the plaintiff's pendent state law claims under 28 U.S.C. § 1367(c) after concluding that the plaintiff's claims were completely preempted under ERISA.

In sum, we hold that on August 7, 1995, when Quantum filed its claims under the Texas Insurance Code and the DTPA, there existed "no possibility" that it could recover against Greensage as the claims were untimely. Thus, the district court did not err in concluding that Greensage had been fraudulently joined.

IV

For the reasons stated in this opinion, the district court's grant of summary judgment in favor of Home Life on the grounds of res judicata is REVERSED. The district court's dismissal of Greensage is AFFIRMED.[7]

AFFIRMED in part; REVERSED in part.

---

[7]The district court granted Greensage's motion for summary judgment with respect to Quantum's state law claims, finding these claims to be time barred under the applicable statute of limitations. Based on this finding, the district court then dismissed Greensage on the basis of fraudulent joinder. The district court should not have entered judgment on the merits against Quantum with respect to Greensage. Having found fraudulent joinder of Greensage, the district court lacked jurisdiction over Greensage to grant summary judgment for it on the merits. This part of the district court's judgment is therefore VACATED.