**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-60277**
_____

**ALICE ADDO,**

**Plaintiff-Appellant,**

**versus**

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY,**

**Defendant-Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

October 16, 2000

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The determinative question before us is whether an insurance company timely removed a case from state court over a $5,000 life insurance policy when it received a letter, after the case was filed, indicating that plaintiff would seek damages exceeding the federal jurisdictional minimum. Finding that the removal petition was untimely, we must vacate a summary judgment for the insurer and remand with instructions to remand to state court.

Plaintiff-appellant Alice Addo submitted a claim as the beneficiary under her mother's life insurance policy to defendant-appellee Globe Life and Accident Insurance Company ("Globe"). Upon investigation, Globe discovered that Addo's mother misrepresented a pre-existing condition on her policy application. Accordingly, Globe denied the claim, rescinded the policy, and refunded Addo the premiums that her mother paid for the policy.

Addo brought suit in state court, requesting $5,000 in actual damages -- the face amount of the policy -- and punitive damages "not to exceed $65,000." A month later, she served a demand letter on Globe, offering to settle the suit for an amount in excess of $75,000.[1] Several months passed before Globe served interrogatories on Addo asking her to confirm that the amount in controversy would not exceed $75,000. When she refused to confirm, Globe removed this case to federal court and Addo moved to remand.

The district court denied Addo's motion and later granted Globe's motion for summary judgment. Addo has appealed.

---

[1] Whether the letter is properly characterized as a "demand letter" or "statement letter" may be disputed, but is irrelevant to our legal analysis. The letter states:

> [To Globe]:
>
> In our telephone conversation of August 21, 1997, it is my understanding that you offered $5,000 to settle the above referenced case. We counter offer with $250,000. This offer will stand until Friday, September 5, 1997.
>
> Very truly yours,
> [Plaintiff's counsel]

Globe removed on the basis of diversity jurisdiction. The complaint stated an insufficient amount in controversy to support diversity jurisdiction <u>See</u> 28 U.S.C. § 1332 (giving district courts original jurisdiction over matters where there is diversity of citizenship and where "the matter in controversy exceeds the sum or value of $75,000"). However, under 28 U.S.C. § 1446(b):

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion order *or other paper* from which it may first be ascertained that the case is one which is or has become removable . . .

<u>Id</u>. (emphasis added). The issue before us is what "other paper" first gave Globe notice that the amount in controversy exceeded $75,000 and whether Globe removed within thirty days after receiving that paper. Addo argues that the demand letter was an "other paper" and that Globe's removal was untimely. Globe counters that Addo has "waived" any removal argument based on the letter, and alternatively, that it timely removed after receiving the interrogatory answers. We need not reach Globe's alternative contention.

As an initial matter, Globe's argument that this issue is not properly before us lacks merit. First, although Addo did not

3

mention the remand ruling in her notice of appeal, the remand ruling was encompassed within the final judgment she appealed such that we may consider it on appeal. See Trust Co. of Louisiana v. N.N.P. Inc., 104 F.3d 1478, 1485 (5th Cir. 1997) (an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment.).

Second, Addo has not "waived" her argument that the letter was an "other paper" which gave Globe notice of the amount in controversy. Globe concedes that Addo issued the letter after filing her complaint, but it argues that she waived any remand argument based on this *post*-complaint demand letter because she has continuously, and erroneously, based her remand arguments here and below on a *pre*-complaint demand letter. We read the record differently. Despite some ambiguity in Addo's trial court briefing, neither the trial court nor this court has been misinformed as to the timing of Addo's letter or the legal consequences for removal that followed from it.

Turning to the merits of the remand argument, an issue this court reviews de novo, Rodriquez v. Sabatino, 120 F.3d 589, 591 (5th Cir. 1997), we have not previously determined whether a post-complaint letter concerning settlement terms may constitute an "other paper" under § 1446(b). See Chapman v. Powermatic, Inc., 969 F.2d 160, 164-65 & 164 n.8 (5th Cir. 1992) (declining to reach

4

this question, but concluding for other reasons that a pre-complaint demand letter does not constitute "other paper"). However, we have held that similar documents can be "other paper," see S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996) (a deposition answer constituted an "other paper"), and the majority of lower courts to have considered this issue hold that a post-complaint demand letter is "other paper" under § 1446(b), see Stramel v. GE Capital Small Business Finance Corp., 955 F. Supp. 65, 67 (E.D. Tex. 1997); Sunburst Bank v. Summit Acceptance Corp., 878 F. Supp. 77, 82 (S.D. Miss. 1995); Rodgers v. Northwestern Mut. Life Ins. Co., 952 F. Supp. 325, 327 (W.D. Va. 1997); *cf.* 14C Charles Alan Wright, et al., *Federal Practice and Procedure* § 3732 (1998) ("[C]orrespondence between the parties and their attorneys or between the attorneys usually [is] accepted as [an] 'other paper' source[] that initiate[s] a new thirty-day period of removability."). Additionally, the SWS case implicitly rejected the most commonly advanced argument against treating a letter between counsel as an "other paper," namely, that a document must actually be filed in the state court proceedings to be an "other paper." See S.W.S. Erectors, 72 F.3d at 494. Moreover, the letter in this case complies with our rule that "other paper" must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal

5

jurisdiction.  See id.  Holding that a post-complaint letter, which is not plainly a sham,[2] may be "other paper" under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit. Further, this holding discourages disingenuous pleading by plaintiffs in state court to avoid removal.

Accordingly, Addo's post-complaint demand letter was an "other paper" under § 1446(b) which gave Globe notice that the case was removable.  Because Globe did not, however, remove within thirty days of receiving that letter, Globe's subsequent removal was improper, and Addo's remand motion should have been granted. Thus, we VACATE the district court's judgment and REMAND with instructions to remand the case to state court.

---

[2] Globe has not argued that Addo's demand letter was a sham. Although the amount of punitive damages requested was high compared to the policy amount, Mississippi law permits punitive damages for bad-faith refusal to pay a policy, and if a punitive recovery was warranted, it could well have exceeded the federal jurisdictional limit.

Wiener, Circuit Judge, DISSENTING.


By failing to consider the full context in which the August, 1997 letter from the plaintiff's lawyer (the "Addo letter") was sent to Globe's agent, and then by failing to recognize that letter for what it really is, the majority opinion reaches the wrong legal result, albeit under the right law.  In the process, that opinion both encourages disingenuous pleading rather than discouraging it and sets a trap for the unwary.  This is why I respectfully and reluctantly — but strenuously — dissent.

I.

Context

In testing the Addo letter to see if it qualifies as an "other paper" for purposes of opening § 1446(b)'s 30-day removal window, we must examine that letter in the framework of all the circumstances that existed at the time it was sent by Addo's lawyer and received by the defendant.  Only by so doing can we properly determine whether Addo's lawsuit —— which was not removable when filed —— "is one which is or has become removable"[3] by virtue of that letter.

Addo's state court petition, filed less than a month before the Addo letter was mailed, is artfully crafted to eschew removability:  In addition to demanding the $5000 proceeds of the

---

[3]  28 U.S.C. § 1446(b).

Globe policy, Addo asked for interest, punitive damages, attorneys' fees and costs, <u>not to exceed</u> $65,000, thereby expressly capping her aggregate recovery at $70,000. Within weeks after suit was filed (and apparently before it was placed in the hands of defense counsel), Globe's agent phoned Addo's lawyer and proposed to settle the case by paying Addo $5000 in consideration for her dismissal of the lawsuit. A few days after that phone call, the 2-sentence Addo letter (reproduced in full in footnote 1 of the majority opinion) rejected Globe's $5000 settlement offer.

With settlement rejected, Addo's lawyer prosecuted her case in state court until, approximately six months later, defense counsel endeavored to establish once and for all whether Addo genuinely capped her claim at $70,000 or, despite her carefully crafted pleadings, intended to seek more. This exercise took the form of Globe's written interrogatories, Addo's answers to which were so equivocal and noncommittal that they served as grounds for Globe's removing the case to federal court on the basis of diversity. Given Mississippi's open-ended law on punitive damages, Addo's answers to Globe's interrogatories were sufficient — at least in the eyes of the district judge — to meet the $75,000 jurisdictional amount for diversity purposes. Indeed, it was only after this 1998 removal that Addo's lawyer resurrected his August, 1997 letter and proffered it as a § 1446(b) "other paper," purportedly sufficient to have opened the 30-day removal window,

8

after the closing of which Globe's removal efforts would be forever barred. These are the circumstances that bracket the sending of the Addo letter and provide the complete framework for testing it as one that first established removability for purposes of § 1446(b).

## II.

Proper Characterization of Addo Letter

The first sentence of the majority opinion describes the Addo letter as one "indicating that plaintiff would seek damages exceeding the federal jurisdictional minimum." That, I submit, is not an objective description of the letter; rather, it states the majority's legal conclusion of this entire appeal, the one with which I take issue today. Next, in its second paragraph, the majority opinion labels the Addo letter a "demand letter," again a legal conclusion with which I beg to differ. And, finally, in that same sentence, the Addo letter is described as "offering to settle a suit for an amount in excess of $75,000." If, but only if, we are willing to read the second and final sentence of the two-sentence Addo letter "in a vacuum," while wearing blinders, can we say it is an offer to settle. I contend, however, that as a matter of law the Addo letter can neither be read nor analyzed that way. When read in pari materia with all the facts and circumstances of the case — as it must be — the Addo letter is absolutely nothing more than an emphatic rejection of Globe's settlement offer. The

9

first sentence of the letter reiterates that offer; the second sentence of the letter rejects that offer.  It's as simple as that.

To support its contrary conclusions — that the Addo letter was "a demand letter" or that it constituted a bona fide offer to settle the suit for more than $75,000, thereby making it an indicator of the plaintiff's intent to seek damages exceeding the federal jurisdictional minimum — the majority relies on its preliminary finding that the Addo letter is not a "sham."  Although I agree wholeheartedly that the Addo letter is not a "sham" for its obviously-intended purpose of rejecting Globe's $5000 settlement offer out of hand, I am convinced beyond peradventure that the Addo letter is a "sham" of a settlement counteroffer.  And, unlike most shams, Addo's sham counteroffer was not intended to fool or mislead anyone!

Obviously irked by what he presumably perceived to be an insultingly-low settlement offer from Globe, Addo's lawyer responded in kind, not with a simple, bland rejection but with one couched in terms of an equally insulting, exaggerated "counteroffer."  Stated differently, the second sentence of the Addo letter is no counteroffer at all; it can only have been intended to drive home the adamancy of her rejection by phrasing it as a sarcastic and grossly hyperbolized "sham" counteroffer:  a quarter of a million dollars to settle a suit on a $5000 life insurance claim, plus whatever punitive damages Addo might obtain

10

from a state court jury of her friends and neighbors?  Sure!

I acknowledge that reasonable jurists can differ, but I can discern no justification for characterizing the Addo letter as anything other than an unconditional rejection of Globe's proposal to settle, despite its being dressed for dramatic effect in the raiment of a faux settlement counteroffer.  A counterproposal to settle for <u>fifty</u> <u>times</u> the amount of the principal demand and more than three-and-one-half times the capped amount —— even including punitive damages —— is just not a demand or a settlement proposal, much less a realistic one.

As proof of this pudding, one need only imagine how vociferously Addo's lawyer would be insisting on this very interpretation had the shoe been on the other foot, i.e., had Globe timely seized on the Addo letter as an "other paper" and removed this case to federal court on the basis of the $250,000 figure in that letter!  I repeat, as a rejection of a settlement offer, the Addo letter is certainly not a sham; as a settlement counteroffer <u>vel</u> <u>non</u>, however, I cannot reasonably classify it as anything but a sham.  Therein lies the crucial difference between the majority and me for purposes of § 1446(b).

The slight amount of jurisprudence on the subject confirms that not every "other paper" exchanged between the parties, or between counsel, or between counsel opposite and a party, will start the running of § 1446(b)'s thirty-day removal clock.  For

11

example, in <u>Sfirakis v. Allstate Insurance Co.</u>,[4] a plaintiff's letter demanding $300,000 in damages when only $20,000 had been sought in the pleadings was held to be "nothing more than posturing by counsel seeking to stake out a position for settlement purposes."[5] The court determined that the letter could not "override the unamended verified complaint that unequivocally states that the damages did not exceed $20,000."[6] I cannot read Addo's letter as even "stak[ing] out a position for settlement purposes." The Addo letter is the antithesis of a genuine invitation to negotiate, much less her lawyer's true evaluation of his client's maximum potential recovery. The district court obviously reached the same conclusion, one that is certainly <u>not</u> clearly erroneous.

Similarly, in <u>Golden v. Dodge-Markham Co., Inc.</u>,[7] the court rejected a true demand letter as nevertheless insufficient to justify a finding of the jurisdictional amount requirement because the court was "not persuaded . . . that Plaintiff's settlement demand was an honest assessment of damages."[8] In the same vein,

---

[4] 1991 WL 147482 (E.D. Pa.).

[5] <u>Id.</u> at *3.

[6] <u>Id.</u>

[7] 1 F.Supp.2d 1360 (M.D. Fla. 1998).

[8] <u>Id.</u> at 1364.

the district court in <u>Standridge v. Wal-Mart Stores, Inc.</u>,[9] held that a $75,000 settlement letter, admittedly sent two weeks <u>before</u> the filing of the complaint, was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff [was] seeking."[10]

That line of cases illustrates the appropriate analysis for a case like this one, rejecting puffery and posturing and crediting only those writings that are seriously meant to be a plaintiff's realistic assessment of the value of his case. To repeat, the Addo letter was unquestionably intended by its author to serve one purpose only — to reject emphatically a low-ball settlement offer. That, I submit, is the reason why he phrased his response as a <u>sham</u> settlement counteroffer, underscoring the adamancy of that rejection. Under the circumstances that existed at the time the letter was confected, mailed, and received, it had to have been obvious to all concerned — especially counsel for Addo — that reference to the preposterous sum of $250,000 was neither a serious settlement counteroffer nor a realistic appraisal of the judgment value of his client's lawsuit. Again, no one would have insisted

---

[9] 945 F.Supp. 252 (N.D. Ga. 1996).

[10] <u>Id.</u> at 256.

on my characterization of the Addo letter more zealously than its author had Globe tried to use it as grounds for removal.

## III.

### Future Effects

Finally, I must respectfully disagree with the prediction of today's panel majority that its holding will discourage disingenuous pleading by those state court plaintiffs who seek to avoid removal. On the contrary, what could be more encouraging of such disingenuous pleading than the majority's letting Addo get away with her artfully drafted state court petition filed a few weeks before her sham letter, and, months later, her craftily evasive responses to Globe's interrogatories, which sought only to determine, one way or the other, whether or not Addo was seeking to recover $75,000 or more.

Besides providing a blueprint for the drafting of such duplicitous pleadings, today's majority opinion also sets a trap for the unwary. From now on, every scrap of paper sent by a plaintiff or his lawyer to a defendant or his lawyer that, irrespective of content or context, happens to mention any dollar figure in excess of $75,000, can and likely shall be held by a federal court to have started the running of § 1446(b)'s thirty-day removal clock. Henceforth, every plaintiff will be free to amend his state court complaint with impunity — and with only the sky as the limit — as long as he does so more than thirty days after

14

having transmitted some "other paper" that happens to mention a figure of at least $75,000.

As yet another consequence of what we do today, ultra-cautious defense lawyers will undoubtedly file notices of removal virtually every time any writing even obliquely referencing a figure of $75,000 or more is received from the plaintiff or plaintiff's counsel. This will create a veritable ping pong game of removal and remand between state and federal courts until remand eventually "sticks." Even more troubling is the realization that less jittery lawyers —— whether plaintiff's or defendant's —— who are "merely" diligent practitioners, will awaken one day to find that (1) the plaintiff has inadvertently subjected himself to removal, or (2) the defendant (like Globe today) has just as inadvertently lost forever any opportunity to remove the case, solely because, more than thirty days earlier, the plaintiff sent the defendant some seemingly innocuous letter or fax or e-mail.

IV.

Conclusion

I remain convinced that, for purposes of opening § 1446(b)'s thirty-day removal window, we must harken to the message of the cases like those cited above and require the presence of a realistic figure in a bona fide writing that demonstrates, in context, a true and functional nexus between the dollars mentioned and the content, context, and circumstances under which such "other

15

paper" is transmitted and received.  If this would cause our trial courts to test "other papers" for objective reasonableness and functional nexus, so be it:  They conduct such tests under other circumstances on virtually a daily basis.

I certainly agree with the panel majority that removal should be sought promptly when removability can <u>reasonably</u> be ascertained. Removal should not be either triggered or forever precluded, however, by any and every "other paper" that happens to mention a high dollar figure; only by those writings that can be read sensibly as first indicating removability.  I respectfully dissent.